IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.10-CV-02930-JLK-BNB

COLORADO CRIMINAL DEFENSE BAR, a Colorado non-profit corporation;
COLORADO CRIMINAL JUSTICE REFORM COALITION, a Colorado non-profit corporation,

      Plaintiffs,

v.

JOHN W. SUTHERS, in his official capacity as Attorney General of the State of Colorado, *et al.*

      Defendants.

---

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

In two cases this year, the Supreme Court again held, without qualification, that a criminal defendant's Sixth Amendment right to counsel includes the right to competent counsel during plea discussions. *See Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376, 1385 (2012); *Missouri v. Frye*, __ U.S. __, 123 S. Ct. 1399, 1407-09 (2012). In *Missouri v. Frye*, the Supreme Court recognized that "the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant," and held that "criminal defendants require effective counsel *during* plea negotiations." 123 S. Ct. at 1407-08 (emphasis added). Similarly, in *Lafler v. Cooper*, the Supreme Court held that criminal defendants have a right to counsel "that extends to the plea bargaining *process*." 132 S. Ct. at 1385 (emphasis added). The Supreme Court explained in *Frye* that "[a]nything less . . . might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him." 123 S. Ct. at 1408 (quotations and citation omitted).

Despite the clarity with which the Supreme Court has spoken, Defendants persist in enforcing Colorado Revised Statutes § 16-7-301(4), which requires indigent criminal defendants to engage in plea discussions with the prosecution before applying for and receiving counsel. Under the statute, Defendants and their subordinates engage in uncounseled plea discussions with indigent defendants entitled to counsel who are charged with certain offenses, including offenses imposing mandatory incarceration. Indigent defendants are required to engage in these uncounseled plea discussions before they can even apply for, much less receive, appointed counsel. By deferring applications for the appointment of counsel and engaging in uncounseled plea discussions with indigent defendants entitled to counsel who are charged with an enumerated offense, Defendants violate these indigent defendants' Sixth Amendment rights, as the Supreme Court's recent pronouncements make abundantly clear.

Public defenders and alternate defense counsel have a statutory duty to uphold the Sixth Amendment rights of these indigent defendants by representing them at all stages of post-arrest proceedings. There is no exception for plea discussions. The Supreme Court has also recognized that criminal defense attorneys have professional and ethical obligations during plea negotiations that "must be met" in order to provide a criminal defendant with his right to effective assistance of counsel. *See Frye*, 132 S. Ct. at 1407.

But Defendants' use of uncounseled plea discussions under Colorado Revised Statutes § 16-7-301(4) prevents Plaintiffs' members who are public defenders and alternate defense counsel from discharging their obligations to represent indigent defendants charged with certain offenses—even indigent defendants charged with offenses imposing mandatory incarceration, who unquestionably have the right to counsel. This lawsuit will eliminate Defendants'

2

interference with the obligations of Plaintiffs' members, and, in turn, ensure that indigent defendants with a right to counsel receive the representation to which they are constitutionally entitled.

The Court previously raised concerns about Plaintiffs' standing to maintain this suit, and Defendants' Motion to Dismiss ("Motion") largely re-raises these same issues. Plaintiffs' Second Amended Complaint (the "Complaint"), however, has addressed each of the Court's standing concerns with specificity and goes well beyond Plaintiffs' pleading obligations at this stage. As the Supreme Court has made clear, the requirements for establishing standing are significantly less burdensome at the pleading phase, and the Court must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

While Plaintiffs need only one ground for Article III standing, and only one Plaintiff needs standing, the Complaint reinforces that CCDB and CCJRC each has associational standing—as representatives of their members who are public defenders or alternate defense counsel harmed by Defendants' conduct—and organizational standing—as entities harmed by Defendants' conduct. As to associational standing, the Complaint incorporates allegations of specific members who are current or former public defenders. These allegations provide first-hand factual descriptions of the harms Plaintiffs' members suffer, including Defendants' interference with their statutory duty to represent indigent defendants during plea discussions. As to organizational standing, the Complaint sets forth specific examples of the money, time, and personnel costs incurred by CCDB and CCJRC in their efforts to counteract the consequences that flow from Defendants' enforcement of the statute.

The Complaint also reinforces Plaintiffs' bases for third-party standing. Plaintiffs' members' allegations set forth first-hand accounts of the intertwined relationship between Plaintiffs' members and the indigent defendants who they have a statutory duty to represent. The allegations also highlight the practical hindrances to indigent defendants' abilities to protect their own rights—hindrances that have left Defendants' use of uncounseled plea discussions unchallenged for far too long.

In addition to re-raising their standing arguments, Defendants also rehash their arguments related to facial versus as-applied challenges and indigent defendants' purported waiver of the right to counsel. While the Court's prior order regarding relevant issues did not focus on these arguments, the Complaint also solidifies Plaintiffs' position on these matters. It makes clear that this lawsuit raises the third-party constitutional claims of indigent defendants with a right to counsel, including those subject to mandatory incarceration. And it sets forth specific allegations related to Defendants' use of advisement forms and first-hand observations that show that indigent defendants who engage in plea discussions—plea discussions that are a precondition to applying for counsel—do not waive their right to counsel by doing so.

Plaintiffs have satisfied and surpassed their notice pleading obligations, and Defendants should no longer be permitted to avoid resolution of the merits. This case is not about Plaintiffs' members trying to get more work or transforming the Sixth Amendment into a bill of employment, as Defendants suggest. Nor is this case about a hypothetical harm: Defendants enforce this statute. And each time they do, public defenders and alternate defense counsel cannot fulfill their statutory duties to represent indigent defendants with a right to counsel during plea discussions, and, in turn, indigent defendants are deprived of their constitutional right to

counsel.  At a minimum, Defendants routinely violate the constitutional right to counsel of indigent defendants subject to the statute who are charged with offenses subjecting them to mandatory jail time or who are sentenced to time served.  And there is nothing friendly about this lawsuit.  Defendants continue to enforce the statute and engage in uncounseled plea discussions thereunder, and the injunctive and declaratory relief requested will end this unconstitutional practice.  As has been clear from the outset, and as the Supreme Court's decisions in *Missouri v. Frye* and *Lafler v. Cooper* confirmed just two months ago, Defendants continue to violate the Sixth Amendment rights of indigent defendants with a right to counsel forced to engage in uncounseled plea discussions under Colorado Revised Statutes § 16-7-301(4).

## BACKGROUND

*1. The Statute.*

Colorado Revised Statutes § 16-7-301 governs the propriety of plea discussions and plea agreements in criminal cases in Colorado.  In the interests of justice, the statute contemplates that district attorneys may engage in plea discussions with criminal defendants.  Colo. Rev. Stat. § 16-7-301(1).[1]  Such discussions, however, can take place only in the presence of defense counsel, unless one of three exceptions applies:  the defendant (1) is ineligible for the appointment of counsel, (2) refuses the appointment of counsel and has not retained counsel, or

---

[1] The full text of subsection 301(1) reads as follows:

Where it appears that the effective administration of criminal justice will thereby be served, the district attorney may engage in plea discussions for the purpose of reaching a plea agreement.  He should engage in plea discussions or reach plea agreements with the defendant only through or in the presence of defense counsel except where the defendant is not eligible for appointment of counsel, or refuses appointment of counsel and has not retained counsel, or except as provided in subsection (4) of this section.

(3) is charged with one of the offenses enumerated in Colorado Revised Statutes § 16-7-301(4).
*Id.*

On the face of the statute, Colorado Revised Statutes § 16-7-301(4) applies only to those eligible for the appointment to counsel—those ineligible having already been excluded from the prohibition against speaking with the prosecution outside the presence of defense counsel.[2] Among other such indigent defendants, the statute applies to those charged with offenses subjecting them to mandatory incarceration. *See, e.g.*, Colo. Rev. Stat. § 18-1.3-501(1.5), (3), (6); Compl. ¶ 45. Indigent criminal defendants who are eligible for the appointment of counsel, but who are charged with an enumerated offense, must engage in plea discussions with the district attorney without counsel. Colo. Rev. Stat. § 16-7-301(4). Their applications for, and appointment of, counsel are deferred until after they discuss plea offers with the prosecuting attorney. *Id.*; Colo. R. Crim. P. 5(c)(2) (defendants accused of misdemeanors and petty offenses shall be advised that they cannot apply for the appointment of counsel "until after the prosecuting attorney has spoken with the defendant as provided in C.R.S. 16-7-301(4)(a)").

---

[2] Colorado Revised Statutes § 16-7-301(4)(a) provides:

In misdemeanors, petty offenses, or offenses under title 42, C.R.S., the prosecuting attorney is obligated to tell the defendant any offer that can be made based on the facts as known by the prosecuting attorney at that time. The defendant and the prosecuting attorney may engage in further plea discussions about the case, but the defendant is under no obligation to talk to the prosecuting attorney. The prosecuting attorney shall advise the defendant that the defendant has the right to retain counsel or seek appointment of counsel. The application for appointment of counsel and the payment of the application fee shall be deferred until after the prosecuting attorney has spoken with the defendant as provided in this subsection (4). Upon completion of the discussions, the prosecutor shall inform the court of whether a plea agreement has been reached . . . .

Colorado does provide an exception whereby those eligible for counsel need not receive counsel if the prosecutor files a written statement that incarceration is not being sought.  Colo. Rev. Stat. § 16-5-501.  That exception, however, is unavailable for indigent defendants charged with an offense covered by Colorado Revised Statutes § 16-7-301(4) until after they engage in uncounseled plea discussions with the prosecutor.  *Id.* §§ 16-7-301(4); 16-7-207(c).

The challenged statute requires prosecuting attorneys to advise defendants of their right to counsel, but does not specify the scope of that advisement or its timing.  *See id.* § 16-7-301(4).  The statute provides that defendants have no obligation to speak with the prosecuting attorney, but does not require the prosecuting attorney to inform defendants that they have no obligation to engage in plea discussions.  *See id.*  The statute does not say that defendants will waive their right to counsel by engaging in plea discussions with the prosecuting attorney.  *See id.*  Nor does the statute require prosecuting attorneys to obtain knowing and voluntary waivers of defendants' right to counsel before engaging in plea discussions.  *See id.*

2. *Plaintiffs.*

Plaintiffs CCDB and CCJRC have a substantial interest in this litigation.  Compl. ¶¶ 85-176.  CCDB is a professional association of attorneys, investigators, and paralegals who represent persons accused of crimes, including indigent defendants.  *Id.* ¶ 90.  To protect the rights of indigent and other criminal defendants, CCDB provides active support for its professional network, including criminal defense training programs.  *Id.* ¶ 91.  CCDB also works directly with criminal defendants by providing an online referral service; the cost and time needed to provide and maintain that service have increased, and the focus of that service has shifted, as a result of the need to assist indigent defendants suffering consequences that flow

7

from uncounseled guilty pleas.  *Id.* ¶ 92.  CCDB has also contracted with a consultant to provide

policy development and lobbying services to counter the effects of uncounseled pleas.  *Id.* ¶¶ 94-

100.

CCJRC is a membership organization of over 6,000 individuals and 100 diverse

organizations and faith communities.  *Id.* ¶ 134.  CCJRC has a mission of reversing the trend of

mass incarceration in Colorado with a core focus on drug policy and sentencing reform.  *Id.*

¶¶ 130, 141.  CCJRC serves as a resource for people in jail and prison, people who were

incarcerated previously, and their families.  *Id.* ¶ 137.  CCJRC has worked to counter the effects

of section 16-7-301(4) directly and with other organizations and attorneys.  *Id.* ¶ 142.  CCJRC

has diverted significant resources away from its core activities in order to address the collateral

consequences of uncounseled plea agreements reached under Colorado Revised Statutes § 16-7-

301(4).  *Id.* ¶ 144.  In response to the growing number of individuals contacting the organization

on such issues, CCJRC has created a new position that focuses on barriers to re-entry, reducing

the impact of collateral consequences, and responding to the ever-increasing volume of requests

for assistance from individuals suffering the consequences of convictions, including those based

on uncounseled guilty pleas.  *Id.* ¶ 145.  CCJRC has also increased its fundraising and lobbying

efforts to counter the effects of section 16-7-301(4).  *Id.* ¶¶ 149-50.

3. *Plaintiffs' Members.*

The members of CCDB and CCJRC also have an interest in this lawsuit.  *Id.* ¶¶ 106-12,

154-62, 139-45.  CCDB and CCJRC each has over 100 members serving as state public

defenders or private attorneys listed as eligible alternate defense counsel.  *Id.* ¶¶ 106-07, 154.

Members who are state public defenders and serve as alternate defense counsel face conflicting

statutory obligations due to Defendants' enforcement of Colorado Revised Statutes § 16-7-301(4). Compl. ¶¶ 79, 84. Section 21-1-104 requires state public defenders to represent indigent defendants accused of misdemeanors after the right to counsel attaches. Compl. ¶¶ 76-79. Section 21-2-104 imposes the same obligations on alternate defense counsel. Compl. ¶¶ 80-82. But section 16-7-301(4) precludes them from providing such representation during plea discussions. The public defenders (and private attorneys that serve as alternate defense counsel) thus cannot fulfill their missions to represent indigent defendants or their statutory, constitutional, and professional obligations to do so. *Id.* ¶¶ 76-84. Further, the statute interferes with the ability of these members to practice their chosen profession and receive the benefits that flow from that practice. *Id.* ¶¶ 79, 82-84.

Plaintiffs seek (among other things) a declaration that section 16-7-301(4) deprives indigent defendants of their right to counsel and an injunction against its unconstitutional enforcement. Compl. at 50. This relief would eliminate the obstacles to Plaintiffs' missions, settle the conflicting obligations faced by Plaintiffs' members, redress the additional harms suffered by Plaintiffs and Plaintiffs' members, and protect indigent defendants against deprivations of their right to counsel. *Id.* ¶¶ 271-95.

## STANDARD OF REVIEW

To resolve Defendants' Rule 12(b)(1) motion related to standing, the Court must accept Plaintiffs' allegations as true and view them in the light most favorable to Plaintiffs. *Smith v. United States*, 561 F.3d 1090, 1097-98 (10th Cir. 2009); *see also United States v. Colorado*

dn-167123

*Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).[3]   The requirements to establish standing at

the pleading stage are significantly less burdensome than at later stages.  *See Lujan*, 504 U.S. at

561.  While Plaintiffs may not rely on bare legal conclusions to support their bases for standing,

Plaintiffs may, at the pleading stage, rely on "general factual allegations" because the Court must

"presume that general allegations embrace those specific facts that are necessary to support the

claim."  *Id.* (quotations and citation omitted); *see also TIG Global, LLC v. PC Specialists, Inc.*,

No. 10-cv-00307-WJM-CBS, 2011 WL 5244409, at *5 (D. Colo. Nov. 3, 2011).  To the extent

the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)—both of which involved failure to state a claim issues—

apply to Rule 12(b)(1) questions of justiciability,[4] they at most require that Plaintiffs' allegations

provide a plausible basis for finding standing.  *Cf. Iqbal*, 556 U.S. at 678.

　　　To resolve Defendants' Rule 12(b)(6) motion arguing that Plaintiffs have failed to state a

claim, the Court must again accept Plaintiffs' allegations as true and view them in the light most

---

[3] Plaintiffs read Defendants' Motion as a facial challenge to the sufficiency of the Complaint's allegations.  To the extent that Defendants' Motion goes beyond the Complaint and challenges the veracity of Plaintiffs' allegations, the Court should permit discovery.  *See Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975) ("When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion.").  "[A] refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice . . . , [which] is present where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary."  *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (quotations and citation omitted).

[4] The scope of that applicability, if any, is questionable.  *See, e.g., Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (explaining that "*Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context . . . and that the court's focus should be on the jurisprudence that deals with constitutional standing"); *cf. Fournerat v. Wisc. Law Review*, 420 F. App'x 816, 820 (10th Cir. 2011)  (distinguishing between Rule 12(b)(1) and 12(b)(6) motions and identifying *Iqbal* only as applicable to resolving a Rule 12(b)(6) motion).

favorable to Plaintiffs.  *Smith*, 561 F.3d at 1097-98.  The Court does not "weigh potential

evidence that the parties might present at trial."  *Id.*  It simply "assess[es] whether the plaintiff's

complaint alone is legally sufficient to state a claim for which relief may be granted."  *Id.*

Dismissal is improper as long as Plaintiffs' allegations "contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678

(quotations and citation omitted).

<u>**ARGUMENT**</u>

This declaratory judgment action requests that the Court invalidate Colorado Revised

Statute § 16-7-301(4) because it prevents indigent defendants with a right to counsel from

applying for or receiving the assistance of public defenders or alternate defense counsel until

after the defendants engage in mandatory, uncounseled plea discussions with the prosecuting

attorney.  By denying indigent defendants counsel during these mandatory plea discussions, the

challenged statute, which Defendants enforce, necessarily deprives these defendants of their right

to counsel during the plea bargaining process.  *See Frye*, 132 S. Ct. at 1407-08; *Lafler*, 132 S. Ct.

at 1385.  While Defendants raise four issues in an attempt to persuade the Court to avoid

resolution of the merits—Article III standing, prudential standing, facial versus as applied issues,

and waiver—each argument fails for the reasons set forth below.  Accordingly, Plaintiffs

respectfully request that the Court deny Defendants' Motion, so that the case may proceed and

remedy the harms inflicted by Defendants' enforcement of an unconstitutional statute.

## I.      **PLAINTIFFS HAVE ARTICLE III STANDING.**

CCDB and CCJRC each has associational standing—as representatives of public

defenders and attorneys who serve as alternate defense counsel injured by Defendants'

enforcement of the statute—and organizational standing—as entities whose functions are impaired by Defendants' enforcement of the statute.[5]  Defendants try to overcome Plaintiffs' factual allegations supporting standing by conflating the less-demanding requirements at the pleading stage with the more-demanding requirements for later stages of litigation and ignoring that Plaintiffs' allegations must be taken as true and viewed in the light most favorable to Plaintiffs.  But Plaintiffs have alleged more than enough to establish standing at this stage.

### A.      CCDB and CCJRC have associational standing.

The Supreme Court has set forth a three-pronged test for associational standing.  First, the association must represent at least one member who would have standing to sue in his own right. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).  Here, CCDB and CCJRC have identified two types of members, and even identified individual members, that would have standing to sue in their own right.  Second, the lawsuit must seek to protect interests germane to the organizations' purposes, *id.*—an undemanding test easily satisfied given CCDB's and CCJRC's interests in assisting their professional attorney members and criminal defendants.  Third, and a prudential requirement only, the lawsuit's claim and the relief sought must not require the participation of individual members.  *Id.*  That is the case here because CCDB and CCJRC raise a constitutional question of law and seek only declaratory and injunctive relief.

---

[5] The Court need only determine that one of these organizations has standing on one of these bases for this suit to proceed.  *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 (1977).

dn-167123

1.       **Plaintiffs have adequately identified their members.**

CCDB and CCJRC represent the interests of two types of aggrieved members—attorneys

who work as public defenders and attorneys who serve as alternate defense counsel.  The

Complaint properly alleges that both CCDB and CCRJC have these specific types of members,

and it further identifies specific individuals.  *See, e.g.*, Compl. ¶¶ 106-07, 154, 177-80, 196-99,

213-19.  Defendants do not dispute that the membership of both organizations includes public

defenders and alternate defense counsel.  Instead, Defendants take issue with the fact that

Plaintiffs did not broadcast their members' names, choosing to use pseudonyms to protect the

members they identified—at least one of whom fears personal reprisal and prejudice to her

indigent defendant clients should member names be announced to the district attorneys with

whom the public defenders deal on a daily basis, *see* Compl. ¶ 195.

The case law provides, however, that a plaintiff-organization may establish associational

standing without publishing its members' names.  *See Doe v. Stincer*, 175 F.3d 879, 882 (11th

Cir. 1999) ("Nor must the association name the members on whose behalf suit is brought.");

*Disability Rights Wisc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008)

(explaining that the requirement that at least one member of an organization would have standing

in his own right "still allows for the member on whose behalf the suit is filed to remain unnamed

by the organization"); *ACLU of Ind. v. Members of the Ind. State Bd. of Law*, No. 1:09-cv-842-

TWP-MJD, 2011 WL 4387470, at *12-13 (S.D. Ind. Sept. 20, 2011) (relying on affidavits of

anonymous members to find standing); *Nat'l Fed'n of the Blind of Neb., Inc. v. Outlook Neb.,*

*Inc.*, No. 8:10CV418, 2011 WL 4802643, at *7 (D. Neb. Oct. 11, 2011) (finding associational

standing where plaintiff-organization alleged it sued "on behalf of specific individuals who

13

themselves have allegedly suffered concrete harm" and denying motion to dismiss attacking

organization's refusal to "identify those members by name") (quotations and citation omitted).

Defendants do not cite a single case that holds that a plaintiff-organization cannot

establish associational standing by identifying its members pseudonymously.  Defendants rely on

*M.M. v. Zavaras*, but that case holds only that *plaintiffs* must proceed by name absent leave to

proceed pseudonymously.  939 F. Supp. 799, 800 (D. Colo. 1996).  Here, the plaintiffs, CCDB

and CCJRC, proceed by name.  Nothing in *Zavaras* suggests Plaintiffs must name their

members—at the pleading stage or any other.  And in any event, Plaintiffs have legitimate

reasons for identifying their members pseudonymously, including the paramount need to protect

the interests of their clients.  Compl. ¶ 195.

> **2.      Plaintiffs' members who are public defenders and alternate defense
> counsel would each have standing to sue in their own right.**

An association's member would have standing to sue in his own right if the member

(1) suffers an injury-in-fact (2) that is fairly traceable to the challenged action of the defendants

and (3) that is likely to be redressed by a favorable decision.  *See United States v. Rodriguez-*

*Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001).  Here, Defendants challenge only whether

Plaintiffs' members satisfy the injury-in-fact requirement.  Mot. at 22-25.[6]  But the Tenth Circuit

has held that the injury need be nothing more than an "identifiable trifle."  *Otero v. Mesa County*

*Valley School District No. 51*, 568 F.2d 1312, 1314 (10th Cir. 1977).  Plaintiffs' members who

---

[6] CCDB and CCJRC have accordingly limited their response to the injury prong but note
that the members' alleged injuries logically and directly flow from Defendants' enforcement of
the challenged statute and would be redressed by a declaratory judgment and/or injunctive relief
that proscribed Defendants' unconstitutional enforcement of the statute.

dn-167123

are public defenders and alternate defense counsel suffer multiple injuries, each substantially more grievous than a trifle. *See, e.g.*, Compl. ¶¶ 84, 108-11, 155-56, 183-84, 187-91, 202, 208-09, 223-24, 238-39, 241-46.

First, Defendants' enforcement of the statute directly prevents public defenders and alternate defense counsel from fulfilling their statutory and professional obligations. *See, e.g.*, Compl. ¶¶ 84, 108, 110-11, 155-56, 189-91, 202, 209, 224, 243, 245-46. Colorado imposes a statutory duty on public defenders and alternate defense counsel that mandates that they represent indigent defendants charged with misdemeanors "at every stage of the proceedings following arrest" and makes no exception for plea discussions. Colo. Rev. Stat. §§ 21-1-104, 21-2-104; *see also id.* §§ 21-1-103, 21-2-103. The Supreme Court has also recognized that an attorney's duty to represent criminal defendants includes obligations during the plea bargaining process that "must be met" as an integral part of securing criminal defendants their right to effective assistance of counsel. *Frye*, 132 S. Ct. at 1407. The challenged statute, however, explicitly requires that indigent defendants' applications for representation by counsel be deferred until after the defendants engage in plea discussions with prosecuting attorneys. *See* Colo. Rev. Stat. § 16-7-301(4). As a result, public defenders and alternate defense counsel are precluded from fulfilling their obligations to represent indigent defendants during these initial plea discussions. This interference with their duties constitutes Article III injury.

Second, the challenged statute injures Plaintiffs' members by imposing conflicting obligations. *See, e.g.*, Compl. ¶¶ 84, 108, 110-11, 155-56, 189, 202, 209, 224, 243, 245-46. Public defenders and alternate defense counsel must competently represent indigent defendants during all post-arrest proceedings. Colo. Rev. Stat. § 21-1-103; *id.* § 21-2-103. But Defendants'

enforcement of the statute precludes them from providing such representation until after indigent defendants engage in uncounseled plea discussions.  Colo. Rev. Stat. § 16-7-301(4).  Under Tenth Circuit precedent, a sufficient Article III injury exists where enforcement of one law "inject[s] a series of conflicting interests" into the litigant's management and execution of his other statutory duties.  *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 630-31 (10th Cir. 1998); *see also ANR Pipeline Co. v. Corp. of Comm'n of State of Okla.*, 860 F.2d 1571, 1579 (10th Cir. 1988); *Fraternal Order of Police v. United States*, 152 F.3d 998, 1001 (D.C. Cir. 1998).

Third, Plaintiffs' members suffer a cognizable harm because the challenged statute makes them unwilling participants in a scheme that violates indigent defendants' constitutional right to counsel.  *See, e.g.*, Compl. ¶¶ 84, 108, 111, 155, 183-84, 202, 238-39.  Plaintiffs' members who are public defenders and alternate defense counsel are the means by which indigent defendants are assured their right to counsel.  Colo. Rev. Stat. § 21-1-103; *id.* § 21-2-103.  But the challenged statute effectively requires that these members deny any requests for counsel prior to the mandatory, uncounseled plea discussions.   Colo. Rev. Stat. § 16-7-301(4).  And the Complaint incorporates the first-hand experience of a public defender who is forced to turn down indigent defendants' requests for assistance because of the challenged statute.  Compl.  ¶¶ 183-84.  The role in depriving indigent defendants of their right to counsel that public defenders and alternate defense counsel must play under the statute constitutes an independent Article III injury.  *See Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 707 (9th Cir. 1997) (holding that a

person suffers cognizable injury where a statute requires him to participate in unlawful discrimination).[7]

Fourth, denying indigent defendants the opportunity even to apply for counsel before the mandatory plea discussions directly interferes with the ability of public defenders and alternate defense counsel to practice their chosen profession. *See, e.g.*, Compl. ¶¶ 84, 108-11, 155-56, 183-84, 187-91, 202, 208-09, 223-24, 238-39, 241-46.   It prevents them from practicing their profession during the uncounseled plea discussions, and it reduces their opportunities to serve as appointed counsel.   It also creates a real risk of impairing their ability to represent indigent defendants who later apply for counsel because of imprudent disclosures, among other things, that may occur in uncounseled plea discussions. *See, e.g.* Compl. ¶¶ 204-05 (describing indigent defendants' confusion during uncounseled plea discussions).   The loss of opportunity to practice their chosen profession and the interference with their ability to represent indigent defendants each "doubtless constitute[s] a cognizable injury to legally protected interests." *Fieger v. Ferry, Jr.*, 471 F.3d 637, 647 (6th Cir. 2006) (Clay, J., concurring); *Lepelletier v. FDIC*, 164 F.3d 37, 42 (D.C. Cir. 1999) (stating that "the denial of a business opportunity" provides a plaintiff with a

---

[7] While this legal principle arises most frequently in the equal protection context, it applies to any situation in which a government statute or action effectively requires that a litigant participate in the deprivation of a third party's rights. *See, e.g.*, *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 797-98 (9th Cir. 2001) (applying principle in Fourth Amendment context).   This injury also provides additional support for why the Court should permit third-party standing in this case. *See Lutheran Church-Missouri Synod v. FCC*, 141 F.3d 344, 350 (D.C. Cir. 1998) (stating that forcing a litigant to participate in a scheme that allegedly deprives a third party of his constitutional rights may alone suffice for purposes of Article III standing in a suit raising the third party's constitutional claims); *Fraternal Order of Police*, 152 F.3d at 1002 ("[W]here a person is effectively used by the government to implement a discriminatory scheme, he may, . . . attack that scheme by raising a third party's constitutional rights.") (quotations and citation omitted).

dn-167123

sufficient interest to invoke the judicial process); *cf. also Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999) (recognizing "that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment").

Fifth, alternate defense counsel suffer an additional and distinct economic injury because the statute's uncounseled plea discussions reduce the hourly wages they would otherwise receive. *See* Compl. ¶¶ 83, 84, 108-09, 155; *see also Amato v. Wilentz*, 952 F.2d 742, 747 & n.5 (3d Cir. 1991) (concluding that loss of potential revenue constitutes injury). Neither case on which Defendants rely in an attempt to negate this distinct economic injury involved an Article III standing inquiry; neither ever even used the words "Article III," "standing," or "injury." *See* Mot. at 23-24 (citing *Roth v. King*, 449 F.3d 1272 (D.C. Cir. 2006); *Mee v. Becker*, 456 F. Supp. 224 (W.D. Mo. 1978)). These cases involved dismissals for failure to state a claim or cause of action upon which relief could be granted. *See Roth*, 449 F.3d at 1283 (concluding that plaintiffs' "Fifth Amendment claims fail to state a cause of action and, therefore, must be dismissed"); *Mee*, 45 F. Supp. at 227 (concluding that plaintiffs could not state a due process claim because they had no protectable property interest).[8] That inquiry "goes to the merits in the typical case, not the justiability of a dispute." *Bond v. United States*, __ U.S. __, 131 S. Ct. 2355, 2362 (2011) (quotations and citation omitted).

---

[8] Even if *Mee* could plausibly be read as engaging in an Article III injury-in-fact inquiry, *Mee* would not support Defendants' arguments because it involved dismissal at the summary judgment stage. *See* 456 F. Supp. at 225.

### 3.     This lawsuit protects interests germane to CCDB, CCJRC, and their members.

Defendants challenge whether Plaintiffs satisfy the germaneness inquiry for associational standing.  Mot. at 24.  This is an undemanding inquiry that requires a court to determine whether the interests the lawsuit seeks to protect would "reasonably tend to further the general interests that individual members sought to vindicate in joining the association and whether the lawsuit bears a reasonable connection to the association's knowledge and experience." *Bldg. & Const. Trades Council v. Downtown Dev., Inc.* 448 F.3d 138, 148-49 (2d Cir. 2006).  Plaintiffs easily satisfy this inquiry.

This lawsuit seeks to protect two intertwined interests.  First, it seeks to protect the members of CCDB and CCJRC who serve as public defenders and alternate defense counsel from the various harms that flow from Defendants' enforcement of the challenged statute. Second, it seeks to protect the interests and rights of indigent defendants deprived of their constitutional right to counsel during plea discussions.[9]

These interests align with the respective purposes of CCDB and CCJRC.  CCDB dedicates itself "to representing and protecting the rights of persons accused of crimes," including indigent defendants.  Compl. at ¶ 85; *see also id.* ¶¶ 89, 93.  CCJRC's mission includes assisting those criminal defendants suffering collateral consequences from criminal convictions. *Id.* ¶¶ 136-41.  And the organizations consist of various stakeholders in the criminal justice process, including criminal defense attorneys and indigent defendants.  *See* Compl. ¶¶ 90-91,

---

[9] Defendants appear to suggest that the Court should ignore that this lawsuit also seeks to protect the interests of indigent defendants.  *See* Mot. at 24.  Defendants provide no support for this proposition.

134-35. Given these interests and members, the interests this lawsuit seeks to protect are germane to CCDB and CCJRC.

> **4.      This lawsuit does not require the participation of individual members.**

Defendants erroneously assert that associational standing is inappropriate because individual member participation is necessary to Plaintiffs' claim and the relief sought. Mot. at 24-25. But Plaintiffs' claim presents a purely legal constitutional question, the resolution of which does not turn on the individual experiences of public defenders and alternate defense counsel. *See Int'l Union v. Brock*, 477 U.S. 274, 287-88 (1986) (stating legal questions do not require individual member participation). And Plaintiffs seek only declaratory and injunctive relief, neither of which would require an individual assessment of damages or other participation of public defenders and alternate defense counsel. *See United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996) (stating that such relief does not require individual member participation).[10]

> **B.      CCDB and CCJRC have organizational standing.**

In addition to associational standing, Plaintiffs also have organizational standing. Defendants do not dispute that an Article III injury arises where a "defendant's illegal acts impair [an organization's] ability to engage in its projects by forcing the organization to divert

---

[10] Defendants' appear to argue that the specificity with which Plaintiffs have alleged injury to individual members—a specificity they previously attacked as lacking—renders associational standing inappropriate. But alleging harms to specific members to establish standing has no bearing on whether "the nature of the *claim* and of the *relief* sought . . . make the individual participation of each injured [member] indispensable to proper resolution of the cause." *See Hunt*, 432 U.S. at 342-43 (quotations and citation omitted; emphases added).

dn-167123

resources to counteract those illegal acts." *Common Cause of Colo. v. Buescher*, 750 F. Supp. 2d

1259, 1269 (D. Colo. 2010) (quotations and citation omitted).  Nor could they dispute that an

Article III injury exists if a defendants' enforcement practices "have perceptibly impaired" an

organization's ability to provide its services in some way.  *Havens Realty Corp. v. Coleman*, 455

U.S. 363, 379 (1982).   And a perceptible injury need not be economic in nature, *id.* at 379 n.20,

or substantial in size—even "an identifiable trifle" is enough, *see Otero*, 568 F.2d at 1314.

Defendants' use of uncounseled plea discussions directly conflicts with and impairs

CCDB's and CCRJC's missions and operations.  Defendants' enforcement of Colorado Revised

Statutes § 16-7-301(4) prevents Plaintiffs from adequately protecting the rights of criminal

defendants and assisting those charged with and convicted of crimes.  Compl. ¶¶ 89-91, 93, 136-

41.  Moreover, CCDB and CCJRC have to use their money, time, and personnel to assist

indigent defendants suffering from the effects of Defendants' enforcement of an unconstitutional

statute.  CCDB and CCJRC do not have unlimited resources.  They would prefer not to divert

them to trying to counteract Defendants' unconstitutional use of uncounseled plea discussions.  If

the Court orders the requested relief, CCDB and CCJRC can put their limited resources to use on

other programs and services that better serve their respective missions.  This is more than enough

for organizational standing.

> 1.    **CCDB and CCJRC suffer drains on their limited resources through an increase in non-lobbying expenditures.**

CCDB and CCJRC expend money, time, and human resources in attempting to mitigate

the consequences of Defendants' enforcement of the challenged statute.  *See, e.g.*, Compl. ¶¶ 88,

92-93, 99-101, 141-45, 150.  The organizations receive increased traffic to their websites and

increased phone calls and other requests that stem from the demand for assistance from indigent

defendants required to engage in uncounseled plea discussions under the statute. *See, e.g.*, Compl. ¶¶ 92-93, 99-101, 143-45. These burdens drain CCDB's and CCJRC's limited resources. *See id.* Moreover, they require the organization to shift additional workers and allot additional time to assisting indigent defendants subjected to uncounseled plea discussions. *See id.* These increased burdens even led CCRJC to create a new, continuing position dedicated in significant part to assisting these indigent defendants. *See id.* ¶ 145. The organization has also had to dedicate more time and personnel to raising funds to offset the increased burden of assisting these indigent defendants. *See id.* ¶ 150. These injuries are certainly more than a trifle, and they are at least as tangible as the increase in calls to an organization's hotline that has been found sufficient to establish Article III injury. *See Common Cause of Colo.*, 750 F. Supp. 2d at 1270.[11]

---

[11] Defendants erroneously argue, without citation, that CCDB must "specifically identify one or more organizational programs" from which resources are diverted. Mot. at 11. That is not the law. *See Common Cause of Colo.*, 750 F. Supp. 2d at 1269-70 (stating that standing exists if the organization has to "divert resources to counteract [defendant's] illegal acts," imposing no requirement to name specific programs from which resources are diverted, and finding standing based on general diversion of resources from organization's "normal election activities") (quotations and citation omitted); *Fair Hous. Council v. Village of Olde St. Andrews*, 210 F. App'x 469, 473 (6th Cir. 2006) ("[T]he circuits generally agree that an organization meets Article III standing requirements where it can show that the defendant's alleged [illegal conduct] caused it to divert resources from other projects or devote additional resources to a particular project in order to combat the alleged [illegal conduct]."); *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 487 (D. Md. 2007) (finding organizational standing where organization alleged that it had undertaken an investigation of defendants' allegedly illegal conduct and thereby "allege[d] facts that demonstrate that the defendants' actions have caused the organization to divert resources to identify and counteract the defendants' unlawful practices, and thereby impede and frustrate its core mission, which is, through education, counseling, advocacy, enforcement, and referral services to aid protected individuals") (quotations omitted). And in any event CCDB's allegations of diversion, *see,* Compl. ¶¶ 95, 96, 99, 142, 144, must be presumed to "embrace those specific facts that are necessary to support the claim," *Lujan*, 504 U.S. at 561 (quotations and citation omitted).

dn-167123

Defendants attempt to negate these injuries by incorrectly arguing that *Twombly* and

*Iqbal* effectively require CCDB and CCJRC to provide detailed allegations that track every cent

diverted, every second expended, and every worker used.  But, even assuming that they apply to

the Rule 12(b)(1) standing inquiry, *Twombly* and *Iqbal* did not transform Rule 8's notice

pleading requirement into a "detailed factual allegations" requirement.  *Iqbal*, 556 U.S. at 678;

*Twombly*, 550 U.S. at 555.  Allegations of increased expenditures of resources suffice; "[t]he fact

that added cost has not been estimated and may be slight does not affect standing, which requires

only a minimal showing of injury."  *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951

(7th Cir. 2007); *see also Fla. State Conference of the NAACP v. Browning*, 522 F.3d 1153, 1165

(11th Cir. 2008).[12]

> **2.     CCDB and CCJRC suffer drains on their limited resources due to the diversion of resources to lobbying independent of this litigation.**

CCDB and CCJRC have each diverted resources to increased consulting and lobbying

costs aimed at counteracting and mitigating the deleterious effects that flow from Defendants'

---

[12] Defendants' arguments with respect to the increased website costs borne by CCDB demonstrate Defendants' misunderstanding of *Twombly* and *Iqbal*.  Plaintiffs set forth specific dollar amounts lost on website work—going beyond the notice pleading requirements—and properly allege that certain of these financial losses stem from the increased traffic and assistance caused by Defendants' enforcement of the challenged statute.  Compl. ¶¶ 99-101.  These factual allegations provide an entirely plausible basis—the most *Twombly* and *Iqbal* require—for showing depletion and diversion of resources.  *See Smith v. Pac. Properties & Dev. Corp.*, 358 F.3d 1097, 1105-06 (9th Cir. 2004) (finding allegations sufficient to show diversion where plaintiff-organization alleged that "in order to monitor the [fair housing] violations and educate the public regarding the discrimination at issue, [the organization] has had (and, until the discrimination is corrected, will continue) to divert its scarce resources from other efforts to promote awareness of—and compliance with—federal and state accessibility laws and to benefit the disabled community in other ways (for example, [the organization's] efforts to free disabled persons from nursing homes")).

use of uncounseled plea discussions under the challenged statute.  *See, e.g.*, Compl. ¶¶ 94-98, 149.  CCJRC, for example, has spent lobbying time and money directed at reducing or eliminating the collateral consequences of uncounseled plea discussions.  *See id.* ¶ 149.  And CCDB has drafted and lobbied for bills aimed at increasing funding for indigent defendants that cannot receive appointed counsel during plea discussions under the challenged statute.  *See id.* ¶¶ 95-98.  Diversions of resources for increased advocacy can establish an Article III injury.  *See Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006) (finding organization met injury "threshold by alleging that it actively engages in counseling, referral, *advocacy*, and educational services") (emphasis added).

Defendants mischaracterize Plaintiffs' increased consulting and lobbying costs as self-inflicted injuries.  Defendants first cite a Tenth Circuit case, Mot. at 12, but that case never even mentions lobbying, found an Article III injury, and actually states that Article III standing often exists even though an alleged injury could be characterized as self-inflicted to some degree.  *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1155-57 & n.7 (10th Cir. 2004) (stating that "[s]tanding is defeated only if it is concluded that the injury is so completely due to the plaintiff's own fault as to break the causal chain") (quotations and citation omitted).  In fact, the courts in all three of the cases on which Defendants rely for their self-inflicted injury argument, *see* Mot. at 12, found an Article III injury based on an organization's "choice" to divert its resources to counteract the effects of the defendant's illegal conduct.  *See Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990); *Am. Society for the Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 26-27 (D.C. Cir. 2011); *Nova Health Sys.*, 416 F.3d at 1155.

dn-167123

At most, the cases on which Defendants rely create only two limitations on advocacy expenses serving as the basis for an Article III injury—and neither applies here.  First, three of the cases on which Defendants rely conclude only that no Article III injury arises where an organization attempts to "manufacture . . . a suit from its expenditure of resources *on that very suit.*"  *Spann*, 899 F.2d at 27 (emphasis added); *Am. Society for the Prevention of Cruelty to Animals*, 659 F.3d at 25 (stating that "an organization's diversion of resources *to litigation or to investigation in anticipation of litigation* is considered a 'self-inflicted' budgetary choice that cannot qualify as an injury in fact for purposes of standing") (emphasis added); *Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994) (finding only that no cognizable injury arises "at least where the only resources 'lost' are the *legal costs of the particular advocacy lawsuit*") (emphasis added); *but see Fair Housing Council*, 210 F. App'x at 474 (finding that multiple circuits "allow[] organizations to prove standing by showing that they diverted resources toward litigation to counteract the defendant's [illegal conduct]").  Second, the other case on which Defendants rely—a taxpayer lawsuit case—holds only that vague allegations of lobbying expenditures directed solely at repealing the tax statute being challenged in the lawsuit do not suffice.  *See Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1432-34 (D.C. Cir. 1995).[13]  But

---

[13] Defendants also cite various district court cases that purportedly establish that bar associations "have a long history of failing to establish organizational standing."  Mot. at 14. While CCDB is a bar association—one dedicated to protecting the rights of criminal defendants—not one of the cases Defendants cite found that a bar association lacked standing simply because it was a bar association; rather, each involved dismissal for inadequate pleading and other issues not found here.  *See N.Y. Criminal Bar Ass'n v Newton*, 33 F. Supp. 2d. 289, 293 (S.D.N.Y. 1999) (finding that the "only specific injury" had "become moot"); *Juvenile Matters Trial Lawyers Ass'n v. Judicial Dep't*, 363 F. Supp. 2d 239, 246 (D. Conn. 2005)

(Footnote continues on next page.)

25

CCDB and CCJRC were not formed simply to challenge this statute; they have not manufactured their injuries as part of this lawsuit.  And Plaintiffs suffered these injuries from increased consulting costs independent of this litigation and for purposes other than simply repealing Colorado Revised Statutes § 16-7-301(4).[14]

## II.     PLAINTIFFS HAVE PRUDENTIAL STANDING.

In addition to Article III standing, Plaintiffs also satisfy the three prudential standing principles:  third-party standing, the zone of interests test, and the prohibition against adjudicating generalized grievances.  *See Rodriguez-Aguirre*, 264 F.3d at 1204.  Although Defendants contest all three, the real focus is whether Plaintiffs have third-party standing to assert the Sixth Amendment rights of indigent defendants with the right to counsel who are subject to Colorado Revised Statutes § 16-7-301(4)—indigent defendants who Plaintiffs'

---

(Footnote continued from previous page.)

(finding that association failed even to "allege[] any injury to itself in the complaint" and its efforts to cure were inadequate because they identified only past injuries in an action seeking prospective relief, an injury to individuals as opposed to the organization, and speculative claims of future loss of membership); *Am. Immigration Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38 (D.D.C. 1998) (finding alleged injuries too speculative and in any event not caused by the purportedly illegal conduct or redressable by the requested relief).

[14] While Defendants do not rely on it, the Court previously asked Plaintiffs to address the relevance, if any, of *Citizens Concerned for Separation of Church and State v. City and County of Denver*, 628 F.2d 1289 (10th Cir. 1980).  *See* Dkt. No. 56, Order Setting Agenda For July 28, 2011 Oral Argument at 3.  This case, which involved a First Amendment challenge to the display of a crèche, confirms that Plaintiffs have associational and organizational standing.  In *Citizens Concerned*, the court found no associational standing because, unlike here, the organization was an unincorporated association, failed to make any "averments relative to membership participation" in the association, and failed to identify any members.  *See Citizens Concerned*, 628 F.2d at 1294, 1297.  And the court found no organizational standing because, again unlike here, the organization provided no evidence to show that the purportedly illegal conduct—the display of a crèche—tangibly impaired its functions or caused it economic or other harm.  *Id.* at 1297.

members are statutorily required to represent.  They do, and Defendants' other challenges to

Plaintiffs' prudential standing also fail.

### A.  Plaintiffs have third-party standing to maintain their suit.

There are two (and only two) requirements to assert third-party claims:  (1) the litigant

must have a "close relationship" with the third party, and (2) there must be a "'hindrance' to the

[third party's] ability to protect his own interests."  *Aid for Women v. Foulston*, 441 F.3d 1101,

1111-12 (10th Cir. 2006) (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)).  CCDB,

CCJRC, and their members—public defenders and alternate defense counsel with a statutory

duty to represent indigent defendants with a right to counsel—have a close relationship with the

indigent defendants subject to Colorado Revised Statutes § 16-7-301(4) who are deprived of

their right to counsel.  Plaintiffs' members represent indigent defendants subject to the

challenged statute frequently on a repeat basis, and are *required by law* to represent these

indigent defendants.  These indigent defendants also face genuine, practical hindrances to their

ability to raise their own claims.

In addition, Plaintiffs will zealously advocate for the rights of the indigent defendants

their members are required to represent, allaying the concerns that led to the adoption of the

prudential doctrine of third-party standing in the first place.  *See Kowalski*, 543 U.S. at 129; *Aid*

*for Women*, 441 F.3d at 1113.  As the Supreme Court has noted, where the "underlying

justifications are absent," it is imprudent for this prudential limitation to bar suit.  *Singleton v.*

*Wulff*, 428 U.S. 106, 114 (1976).  Defendants do not dispute Plaintiffs' zealous and vigorous

advocacy against Defendants' constitutional violations, and there is no question that Plaintiffs

share a common interest in remedying these harms.  *See, e.g.*, Compl. ¶¶ 115, 161; *see also Aid*

*for Women*, 441 F.3d at 1113 (holding that "physician Plaintiffs' interests align with those of their minor patients, such that they can provide proper representation of those rights"); *Campbell v. Louisiana*, 523 U.S. 392, 400 (1998) (holding that a white criminal defendant could rely on the rights of hypothetical black grand jurors to not be discriminatorily excluded from grand juries because they shared a common interest in eradicating a discriminatory restriction).  Still, Defendants argue that Plaintiffs lack third-party standing to maintain this suit, apparently preferring a class action for money damages filed by indigent defendants whose constitutional rights they have violated.  But "insofar as the applicable constitutional questions have been and continue to be presented vigorously and cogently, . . . *the denial of jus tertii standing in deference to a direct class suit can serve no functional purpose*."  *Craig v. Boren*, 429 U.S. 190, 194 (1976) (quotations and citation omitted; emphasis added).

1.      **Plaintiffs and their members have a close relationship with the indigent defendants they are required to represent.**

"When . . . enforcement of a restriction against the litigant prevents a third party from entering into a relationship with the litigant (typically a contractual relationship), to which relationship the third party has a legal entitlement (typically a constitutional entitlement), third-party standing has been held to exist."  *U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990) (citing *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 954-58 (1984)); *see also Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 810 (D.C. Cir. 1987) ("[T]he typical Supreme Court case recognizing third party standing involves a challenge to a statute that interferes with the litigant's protected relationship with third parties.").  Here, enforcement of the statute prohibits Plaintiffs' members from entering into attorney-client relationships with indigent defendants with the right to counsel—attorney-client relationships that Plaintiffs' members are

28

required by law to enter and to which indigent defendants are constitutionally entitled.  The

third-party interests that Plaintiffs seek to vindicate are thus "inextricably bound up with the

activity the litigant wishes to pursue." *Singleton*, 428 U.S. at 114; *Essence, Inc. v. City of

*Federal Heights*, 285 F.3d 1272, 1287 (10th Cir. 2002) ("A well-established exception to the bar

against third-party standing is when the exercise of rights by the third party is intertwined with

the litigant's activities.").  This is sufficient to support third-party standing.

 Defendants' reliance on *Kowalski* in an attempt to deny Plaintiffs third-party standing is

misplaced.  *See* Mot. at 32-33.  *Kowalski* involved a *pre-enforcement* challenge by two Michigan

attorneys to a Michigan statute that prohibited (with certain exceptions) the appointment of

*appellate counsel* for indigent defendants who pleaded guilty.  *Kowalski*, 543 U.S. at 127-28.

The attorneys invoked nothing more than the attorney-client relationship to demonstrate the

requisite closeness in seeking pre-enforcement review of the statute.  *Id.* at 130.  The Supreme

Court rejected this bare assertion as insufficient because, unlike in prior cases involving the

attorney-client relationship, the attorneys relied solely on a potential, prospective relationship

with hypothetical, unascertained criminal defendants.  *Id.* at 130-31.

 Here, by contrast, Plaintiffs' members have more than a bare desire to enter into an

attorney-client relationship—they are required by law to represent indigent defendants, including

those subject to Colorado Revised Statutes § 16-7-301(4), during all phases of proceedings, with

no exception for plea negotiations.  Colorado law requires public defenders or alternate defense

counsel to represent indigent defendants, *see* Colorado Revised Statutes § 21-1-101-106, § 21-2-

101-107, including indigents charged with misdemeanors, *see* Colorado Revised Statutes

§ 21-1-103(2) (Public defenders "*shall represent* indigent persons charged in any court with

crimes which constitute misdemeanors.") (emphasis added).  Plaintiffs' members must represent indigent defendants "at every stage of the proceedings following arrest, detention, or service of process."  Colo. Rev. Stat. § 21-1-104(1)(a); *see also id.* §§ 21-2-103(1), -104(1)(a).  Neither the constitutional nor the statutory mandate that Plaintiffs' members represent indigent defendants at critical stages makes any exception for plea discussions.

Thus, unlike the two attorneys in *Kowalski*, CCDB and CCJRC are relying not just on the attorney-client relationship as it applies to hypothetical, future representations which may or may not occur, but on representations that are required by law to occur.  Plaintiffs' interests are bound up with the indigent defendants whose rights this suit seeks to vindicate not by a mere desire to represent them, but by Colorado law requiring their members to represent them.  *Cf. Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 n.3 (1989) (finding that "[t]he attorney-client relationship . . . is one of special consequence; and . . . it is credibly alleged that the statute at issue here may materially impair the ability of third persons . . . to exercise their constitutional rights") (quotations and citation omitted); *Triplett*, 494 U.S. at 720  (holding that litigant-attorney could raise client's due process rights to representation and challenge a fee scheme because a litigant may assert the rights of a third party where a restriction prevents the two from entering into a relationship); *cf. also Wounded Knee Legal Def./Offense Comm. v. F.B.I.*, 507 F.2d 1281, 1284 (8th Cir. 1974) (holding that "a lawyer has standing to challenge any act which interferes with his professional obligation to his client and thereby, through the lawyer, invades the client's constitutional right to counsel").

Further, unlike in *Kowalski*, in which the attorneys filed suit to challenge the Michigan law before it was enforced, *see* 543 U.S. at 127-28, no one disputes that Colorado Revised

Statutes § 16-7-301(4) is already in effect and being enforced against indigent defendants.

Indeed, not only is the statute in effect, but (and again unlike *Kowalski*), two named defendants,

including a District Attorney required to enforce it, have admitted that Colorado Revised Statutes

§ 16-7-301(4) is unconstitutionally applied to those indigents whose rights Plaintiffs seek to

vindicate.  *See* Dkt. No. 46, Def. Thiebaut's Answer to First Am. Compl. ¶¶ 5, 8, 10, 18; Dkt.

No. 75, Def. Colo. State Public Defender Douglas Wilson's Answer to Second Am. Compl. ("PD

Answer") ¶¶ 3, 11, 13, 17, 19; *see also* Dkt. No. 51-1, Settlement Agreement ¶ 1.  While

*Kowalski* involved hypothetical defendants who might be subject to a statute that had yet to take

effect, 543 U.S. at 127-28, 130-31, there is no such impediment to Plaintiffs' claims here.

### 2.    Indigent defendants have limited practical means of protecting their own Sixth Amendment rights.

To satisfy the hindrance prong of the third-party standing test, Plaintiffs have to show

only that it is prudent to allow them and their members to raise the rights of indigent defendants

subject to the statute because "practical obstacles prevent [indigent defendants] from asserting

rights on behalf of [themselves]."  *Joseph H. Munson Co.*, 467 U.S. at 956.  Here, indigent

defendants' abilities to protect their own interests with respect to the harm inflicted by

Defendants' ongoing enforcement of the statute is impeded because indigent defendants who

accept uncounseled pleas are unlikely to understand the consequences and therefore lack the

incentive to raise a timely challenge; by the time such incentive arises, the applicable statute of

limitations is likely to have run, and even if it has not, indigent defendants lack the necessary

experience and resources to mount a challenge.  The claims of indigent defendants who reject

plea agreements and demand counsel will be rendered moot by the appointment of counsel,

meaning that they too will be unable to protect their own rights.

31

Initially, Defendants suggest that indigent defendants suffer no impediments to their ability to raise their own Sixth Amendment right to counsel because "a qualifying defendant who desires counsel need only ask for it, and counsel will be appointed."  Mot. at 34.  But the statute defers the appointment of counsel until *after* plea discussions with the prosecution under the statute are complete:  "The application for appointment of counsel and the payment of the application fee *shall be deferred until after* the prosecuting attorney has spoken with the defendant as provided in this subsection (4)."  Colo. Rev. Stat. § 16-7-301(4)(a) (emphasis added).  By deferring the application for (and the appointment of) counsel until after uncounseled plea discussions, the statute defers any possibility that counsel may be appointed until after an indigent defendant's Sixth Amendment right to counsel has been violated.[15]

Those indigent defendants whose Sixth Amendment rights have been violated are further hindered because they are unlikely even to be aware of the constitutional harm they have suffered.  *See, e.g.*, Compl. ¶¶ 124-25, 171-72.[16]  As alleged in the Complaint, some indigent defendants with the right to counsel believe the prosecuting attorney with whom they are required to speak is their lawyer and may ask the prosecutor questions about the collateral

---

[15] Defendants go on to argue that indigent defendants suffer no impediments to their ability to raise their own Sixth Amendment right to counsel because, according to Defendants, they waive that right.  But indigent defendants with the right to counsel cannot waive that right by engaging in mandatory uncounseled plea discussions—a statutorily compelled "waiver" is not a constitutionally compliant knowing and voluntary waiver.  Further, waiver goes to the merits of Plaintiffs' constitutional challenge, not the practical impediments faced by the indigent defendants to asserting their own rights.

[16] This is not to suggest they have not been harmed.  *Cf., e.g.*, *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978) (holding that, even absent proof of injury, a plaintiff is entitled to nominal damages upon proof of violation of a substantive constitutional right); *Smith v. Coughlin*, 748 F.2d 783, 789 (2d Cir. 1984) (applying same in Sixth Amendment right to counsel context).

consequences of their plea.  *See id.* ¶¶ 204-05, 248.  Regardless, indigent defendants are unlikely

to suspect that a court-mandated process requiring them to engage in uncounseled plea

discussions violates their constitutional rights.  *See id.* ¶¶ 124-25, 171-72.  Without knowledge of

a constitutional violation, indigent defendants do not know they have any grounds, and therefore

have no incentive, to challenge the violation of their right to counsel.[17]

Moreover, indigent defendants who accept an uncounseled plea agreement are unlikely to

foresee or to understand fully the potential long-term implications and collateral consequences of

their plea agreement with the prosecution.  For example, an indigent defendant charged with

publicly consuming more than 30 grams but less than 2 ounces of marijuana, may not suspect

that entering an uncounseled plea agreement for a charge punishable by only fifteen days in jail

could lead to deportation.  *See* Colo. Rev. Stat. § 18-18-406(3)(a)(I); 8 U.S.C. § 1227(a)(2)(B)(i).

In *Padilla v. Kentucky*, the Supreme Court recognized that criminal defendants may not

understand these types of consequences without the advice of competent counsel, and that the

right to counsel includes competent advice regarding such consequences.  __ U.S. __, 130 S. Ct.

1473, 1483-85 (2010).  If indigent defendants who enter uncounseled plea agreements under

Colorado Revised Statutes § 16-7-301(4) do not understand or suspect that their plea agreements

carry significant collateral consequences, *see, e.g.*, Compl. ¶ 204 (relating how indigent

defendants subject to the statute ask the prosecutor questions about the consequences, including

---

[17] This makes the third-party indigent defendants on whose behalves Plaintiffs have filed suit distinguishable from those in *Kowalski*, who were denied counsel only on appeal.  *See* 543 U.S. at 126-27.  If one is already attempting to proceed on appeal, one is already incentivized to challenge one's plea.  And, the guilty pleas being appealed may themselves have been entered with, and on the advice of, counsel, arming defendants with an adequately developed record and the experience to launch their appeals (or collateral attacks).

dn-167123

collateral consequences, of plea bargains); *id.* ¶ 230 (relating how indigent defendants subject to

the statute, including those sentenced to jail, were never informed about the adverse immigration

consequences associated with entering into their uncounseled plea deals); *id.* ¶ 232 (indigent

defendants subject to the statute do not discover adverse consequences until well after their

guilty pleas are entered, when the immigration consequences arise), they will not have an

incentive to appeal or collaterally attack their guilty plea.

By the time such an incentive arises—*i.e.*, when the collateral consequences of the

defendants' uncounseled guilty plea come to bear—challenges to the unconstitutional guilty plea

may be time-barred.  *See* Compl. ¶¶ 127, 174, 232-35, 249; Colo. App. R. 4(b)(1) (providing

forty-five days to file notice of direct criminal appeal); Colo. R. Crim. P. 35(c)(3)(I) (providing,

by reference to Colorado Revised Statutes §16-5-402, eighteen months for misdemeanors or six

months for petty offenses for a Rule 35(c) collateral attack); *see also Braxton v. Zavaras*, 614

F.3d 1156, 1160 (10th Cir. 2010) (two-year statute of limitations for § 1983 claim).

Accordingly, a direct appeal or collateral attack is of limited utility, and is insufficient to

fully vindicate a violation of an indigent defendant's constitutional rights.  The remedy for a

deprivation of an indigent misdemeanant's right to counsel is the vacating of his sentence.  *See*

*United States v. Jackson*, 493 F.3d 1179, 1186-87 (10th Cir. 2007); *Shayesteh v. City of S. Salt*

*Lake*, 217 F.3d 1281, 1285 (10th Cir. 2000).  As a result, the defendant may still suffer the

adverse, unforeseen consequences of the conviction, such as deportation or future sentencing

enhancements, even though his sentence has been vacated.  *See Jackson*, 493 F.3d at 1186-87

34

(holding that while an uncounseled state misdemeanor sentence must be disregarded in calculating the defendant's sentencing range, the conviction itself could still be considered).[18]

As to those indigent defendants who reject the plea offers and demand counsel, they may find that the plea deals offered by the prosecuting attorney during uncounseled plea discussions under Colorado Revised Statutes § 16-7-301(4) are no longer available.  Compl. ¶¶ 193, 210. Having been denied counsel at the only stage when legal advice may have helped them, *Frye*, 132 S. Ct. at 1407-08, their claims may effectively be mooted once they obtain counsel, denying them any meaningful way to challenge the violation of their Sixth Amendment rights.  *Cf., e.g.*, *Eisenstadt v. Baird*, 405 U.S. 438, 446 (1972) (finding third-party standing where third parties harmed by law "are denied a forum in which to assert their own rights").

### 3. Plaintiffs do not need to name or include as named plaintiffs specific indigent defendants to satisfy third-party standing.

Perhaps recognizing that Plaintiffs satisfy the Supreme Court's two-pronged third-party standing test, Defendants attempt to add a third prong.  Defendants argue that Plaintiffs cannot have standing without identifying and/or "nam[ing] . . . as a plaintiff" specific, individual indigent defendants whose Sixth Amendment rights were violated by the application of Colorado Revised Statutes § 16-7-301(4).  Mot. at 3; *id.* (faulting Plaintiffs for not naming "identifiable

---

[18] Other practical barriers further hinder the ability of an indigent defendant to raise the harms inflicted on him by being forced to engage in uncounseled plea discussions under the statute.  An indigent defendant may lack the financial resources to maintain a costly and time-consuming action, particularly a collateral attack.  Moreover, a defendant's Sixth Amendment claim may be mooted if the defendant completes his sentence before the court can resolve the appeal or collateral attack, and the consequences of his unconstitutional plea will remain unremedied.  These barriers, combined with the typical educational and other obstacles that relate to indigency, impair the ability of an indigent defendant who accepts an uncounseled plea agreement to challenge his deprivation of counsel.

aggrieved plaintiffs"); *id.* at 32 (faulting Plaintiffs for not "naming criminal defendants who have

been harmed by the challenged statute, or adding them as plaintiffs in this case"); *id.* at 33

(asserting that Plaintiffs "have failed to point to the defendants who have been harmed"); *id.* at

31-34 (arguing that Plaintiffs lack third-party standing in light of same).  That is not the law.

The Supreme Court has established, and this Court follows, a two-pronged inquiry to

determine whether a litigant has third-party standing.  *See Aid for Women*, 441 F.3d at 1111-12

(citing *Kowalski*, 543 U.S. at 130).  As long as Plaintiffs satisfy the third-party standing test,

which they do, there is no requirement that they name and/or include as party plaintiffs

individual representatives of the class of third parties whose rights they seek to vindicate.  *See,*

*e.g.*, *id.* at 1112-14 (holding that plaintiff physicians had third-party standing and could assert the

rights of their minor patients, even though no minor patients were named); *Essence, Inc.*, 285

F.3d at 1287 n.13  (finding that plaintiffs had third-party standing to assert the rights of 18-20

year old patrons of nude dancing establishments, even though no patrons were named).  Not only

is the burden that Defendants seek to impose on Plaintiffs without legal support, but it would

obviate the need for third-party standing.  It cannot be (and is not) the law, that a litigant has

third-party standing only where the litigant has no need for third-party standing.[19]

---

[19] The burden Defendants seek to impose also flies in the face of Plaintiffs' pleading
obligation at this stage.  Defendants argue that "it is impossible to tell from Plaintiffs'
Complaint" whether an indigent defendant whose Sixth Amendment rights were violated under
Colo. Rev. Stat. § 16-7-301(4) "actually exists."  Mot. at 31-32.  But Plaintiffs have alleged that
such indigent defendants exist, *see, e.g.*, Compl. ¶¶ 181-82, 201-02, 220-21, and the only
plausible inference from Plaintiffs' Complaint is that such indigent defendants exist.  That such
indigent defendants exist must thus be accepted as true for purposes of deciding Defendants'
Motion (leaving aside that, given various statements at the first oral argument, there seems to be
little dispute that such defendants actually exist in significant numbers).  To the extent
Defendants seek to raise a factual issue related to standing at the motion to dismiss stage,

(Footnote continues on next page.)

dn-167123

Indeed, Defendants' insistence on questioning whether such individuals exist is particularly puzzling here.  As alleged in the Complaint, Colorado Revised Statutes § 16-7-301(4) applies to indigent defendants charged with offenses subjecting them to mandatory jail sentences.  *See* Colo. Rev. Stat. §§ 180-1.3-501(6), 18-1.3-501(1.5)(a), 35-50-119(2), 42-2-138(1)(d)(I), 42-4-1301, 42-4-1307, 42-7-422; *see also* Compl. ¶ 45 (discussing same).  For example, a misdemeanor conviction for assault in the third degree in violation of Colorado Revised Statutes § 18-3-204 carries a mandatory sentence of "at least six months."  Colo. Rev. Stat. § 18-1.3-501(6).  The statute also applies to indigent defendants who are sentenced to time-served.  *See, e.g.*, Compl. ¶¶ 49, 182, 201, 221.  Defendants admit that, "[i]f imprisonment is a possibility, an indigent criminal defendant is of course entitled to the appointment of counsel to represent him at all critical stages of the proceeding."  Mot. at 41.  And defendants acknowledge "that an indigent criminal defendant's Sixth Amendment right to counsel has already attached by the time any plea negotiations pursuant to § 16-7-301(4) begin."  Mot. at 40.  Thus Defendants appear to concede that there are indigent defendants with a right to counsel who nonetheless are required to engage in uncounseled plea discussions.[20]  Not only that, but, absent a waiver,

---

(Footnote continued from previous page.)

discovery should be permitted from Defendants to confirm the existence and identities of the indigent defendants whose constitutional rights they have violated.

[20] Defendants state, incorrectly, that Plaintiffs seek to assert the rights of indigent defendants who "would have received a better sentence had they been represented by counsel at their plea negotiation."  Mot. at 31.  While it may well be true that some indigent defendants would receive better sentences if they were not denied their constitutional right to counsel during plea discussions under the statute, Plaintiffs do not advocate on behalf of so (potentially) limited a class.  Plaintiffs seek to assert the rights of all indigent defendants with the right to counsel who are forced to engage in uncounseled plea discussions under Colorado Revised Statutes § 16-7-301(4) in violation of their Sixth Amendment rights to counsel, not merely those who might have received better offers had they been represented by counsel.

Defendants would apparently concede that, in every application where imprisonment is a possibility, their enforcement of the statute by engaging in uncounseled plea discussions violates indigent defendants' constitutional rights.

**B.      The "zone of interests" test is inapplicable, and the interests sought to be protected by Plaintiffs' Complaint satisfy the test in any event.**

As the Tenth Circuit has recognized, "[t]he zone of interests test originated, and is useful primarily, in the context of administrative litigation under the APA." *Hernandez-Avalos v. INS*, 50 F.3d 842, 846 (10th Cir. 1995).  By contrast, in "non-administrative litigation, . . . the zone-of-interests test is simply a restatement of the general rule against third-party standing." *Id.* (internal quotation omitted); *Ellison v. Connor*, 153 F.3d 247, 254 n.2 (5th Cir. 1998) (noting that "[t]he zone of interests test is not applied to constitutional claims," but rather "is relevant when a plaintiff sues an agency pursuant to a statutory provision").

Given this authority, it is not surprising that Defendants cite no case applying the prudential zone of interests test to a constitutional challenge such as this, much less a case dismissing a constitutional challenge in an analogous situation.  In a constitutional challenge like this one, the zone of interests is redundant with, and collapses into, the third-party standing inquiry.  *See Hernandez-Avalos*, 50 F.3d at 846.[21]

---

[21] *See also Wilderness Soc'y v. Kane Cnty.*, 581 F.3d 1198, 1217 n.10 (10th Cir. 2009) (noting that it has been argued "that the zone of interest test in the constitutional context is redundant of the third-party standing inquiry"), *overruled on other grounds by* 632 F.3d 1162 (10th Cir. 2011) (en banc); *FAIC Sec., Inc. v. United States*, 768 F.2d 352, 358 (D.C. Cir. 1985) ("We have been unable to find any case in which the Supreme Court has relied upon the plaintiff's failure independently to meet the zone of interests test as the basis for its refusal to accord standing for the assertion of third-party rights."); *Bowman v. Wilson*, 672 F.2d 1145, 1152 (3d Cir. 1982) ("The question whether a litigant is within the zone of interests of a rule of law

(Footnote continues on next page.)

dn-167123

To the extent that the Court nonetheless finds that the zone of interests test has some application to this case, the test "is not meant to be especially demanding." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987); *see also Am. Mining Congress v. Thomas*, 772 F.2d 640, 651-52 (10th Cir. 1985) ("This Circuit has been lenient in applying the 'zone of interest' test. . . . [A] court should demand no more than a sensible relation between some subject of the statute and the plaintiff's interest in the outcome of the litigation."). The zone of interests test is a judicially created prudential standing doctrine that asks "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970).

Here, the interests sought to be protected by Plaintiffs' Complaint are arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. Defendants admit that the Sixth Amendment rights of indigent defendants with the right to counsel, who are denied that right through Defendants' enforcement of Colorado Revised Statutes § 16-7-301(4), fall squarely within the ambit of the Sixth Amendment. *See* Mot. at 26-27; *see also, e.g.*, *Haitian Refugee Ctr.*, 809 F.2d at 811-12 (finding that zone of interests may be satisfied by reference to the third parties' interests in third-party standing cases). Similarly, the interests of Plaintiffs and their members fall within the ambit of the Sixth Amendment. Colorado law protects indigents' right to counsel by imposing statutory duties on Plaintiffs' members.

---

(Footnote continued from previous page.)

whose benefit he invokes may also be framed in appropriate cases by reference to the concept of third-party standing. . . .").

Because their members are the "counsel" to which indigent defendants have a right, Plaintiffs are at least "arguably" within the applicable zone of interests. *Cf. Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1243-44 (10th Cir. 2008) (holding that Wyoming fell within the zone of interests of the Federal Gun Control Act, which regulated possession and transportation of firearms by individuals, because the state had a role in the implementation of the Act and the interpretation in question hindered the state's ability to enforce its laws); *ANR Pipeline Co.*, 860 F.2d at 1579.

**C.** **The constitutional violations outlined in the Complaint are not generalized grievances, nor have Plaintiffs brought a "friendly" suit to remedy the harms caused by Defendants' enforcement of an unconstitutional statute.**

The harms alleged by CCDB and CCJRC are not "a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Colorado Revised Statutes § 16-7-301(4) violates the Sixth Amendment right to counsel of indigent defendants with a right to counsel who are forced to engage in uncounseled plea negotiations with the prosecution under the statute. This is not a grievance shared by the public at large. Plaintiffs' members are the people charged with providing the representation of which these indigent defendants are being denied, thus subjecting them to conflicting duties. Again, this is not a grievance shared by the public at large. Plaintiffs themselves are organizations dedicated to protecting the rights of indigent defendants and remedying the effects of violations of those rights, such as those caused by Defendants' unconstitutional conduct. This, too, is not a grievance shared by the public at large. Not only does enforcement of the statute harm a limited class of indigent defendants, but also harms a limited class of persons, public defenders and alternate defense counsel, who are required to represent them. This case

40

bears no resemblance to cases brought by a voter or taxpayer based solely on a generalized grievance suffered by the public at large.

Nor is this a "friendly" or "collusive" lawsuit failing to allege an actual controversy between parties with adverse legal interests. Defendants argue that Plaintiffs' suit accusing them of violating the Constitution is "friendly" because neither the Attorney General nor the District Attorneys has the ability to appoint counsel to indigent defendants. Mot. at 30. But Defendants ignore that it is their actions that cause the constitutional harms alleged; they are the ones who violate the Sixth Amendment rights of indigents with a right to counsel by engaging in uncounseled plea discussions. Defendants do not, and could not, deny that they enforce Colorado Revised Statutes § 16-7-301(4) and conduct or authorize uncounseled plea discussions thereunder.

In a suit for injunctive and declaratory relief, as here, it is axiomatic that those whose conduct a plaintiff seeks to enjoin, and who have some connection to enforcement of the challenged statute, are proper (indeed necessary) defendants. *See, e.g.*, *Aid for Women*, 441 F.3d at 1108 (seeking declaratory and injunctive relief against enforcement of Kansas statute by bringing suit against "all county and district attorneys in Kansas and against the Attorney General of Kansas") (internal quotation omitted); *see also Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) ("[W]here a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed

in his complaint.").  The relief sought here would, if granted, impact the behavior of all of the

Defendants.[22]

## III.    THERE IS NO FACIAL VERSUS AS-APPLIED BAR TO PLAINTIFFS' SUIT.

### A.    Plaintiffs have filed, and may maintain suit on behalf of, indigent defendants with a right to counsel to whom the statute is unconstitutionally applied.

As the Supreme Court has recently noted, "the distinction between facial and as-applied

challenges is not so well defined that it has some automatic effect or that it must always control

the pleadings and disposition in every case involving a constitutional challenge." *Citizens*

*United v. FEC*, 130 S. Ct. 876, 893 (2010); *see also Doe v. City of Albuquerque*, 667 F.3d 1111,

1122-28 (10th Cir. 2012).  The distinction between facial versus as-applied challenges, the Court

went on to note, "goes to the breadth of the remedy employed by the Court, not what must be

pleaded in a complaint." *Citizens United*, 130 S. Ct. at 893; *Doe*, 667 F.3d at 1124.[23]  Here,

Plaintiffs have challenged Colorado Revised Statutes § 16-7-301(4) on behalf of "indigent

defendants *with a right to counsel*."  Compl.¶ 33 (emphasis added); *id.* ¶¶ 51, 69, 79, 84, 121,

---

[22] Public Defender Wilson and District Attorney Thiebaut admit Colorado Revised Statutes § 16-7-301(4) is enforced and that its enforcement violates indigent defendants' right to counsel.  PD Answer ¶¶ 3, 11, 13, 17, 19; Compl. ¶¶ 267-68.  Public Defender Wilson acknowledges that he is bound by the legislature's limitations on the scope of persons accused of crimes that his office is able to represent and admits that he has continued to act in accordance with the Colorado Revised Statutes § 16-7-301(4) after Defendant Attorney General Suthers asserted that it was "constitutionally defensible."  PD Answer ¶ 15; *id.* Aff. Def. ¶¶ 24, 26-27.  District Attorney Thiebaut, further, has said that he must continue to enforce the law until it is declared unconstitutional.  Compl. ¶ 268.

[23] *See also Citizens United*, 130 S. Ct. at 919 (Roberts, C.J., concurring) ("[T]he debate over whether to consider this claim on an as-applied or facial basis strikes me as largely beside the point.  Citizens United has standing . . . .  Citizens United has a constitutional claim . . . .  The Government has a defense [based on the Act's constitutional application]. . . . Whether the claim or the defense prevails is the question before us.").

165, 166, 168, 254, 265, 276, 289.  Plaintiffs seek an injunction prohibiting the enforcement of the statute against "indigent defendants *with a right to counsel*." *Id.* at 50 (emphasis added). The statute is facially unconstitutional as applied to each and every indigent defendant with a Sixth Amendment right to counsel.  That is what the Complaint alleges, and it is on behalf of that class of third-party indigent defendants with the right to counsel that Plaintiffs filed, and may maintain, this suit challenging the constitutionality of the statute.

While Defendants argue that Plaintiffs cannot maintain suit on behalf of those indigent defendants, that is a question of third-party standing.  *See, e.g.*, *City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999) (plurality op. of Stevens, J.) (noting that because a party asserting a facial challenge seeks also to vindicate the rights of others "adversely impacted by the statute in question. . . . the threshold for facial challenges is a species of third party (*jus tertii*) standing, which we have recognized as a prudential doctrine . . . .") (citing *Joseph H. Munson Co.*, 467 U.S. at 955); *Dickerson v. Napolitano*, 604 F.3d 732, 741-42 (2d Cir. 2010) (equating limitations on facial challenges to those of third-party standing, and noting that it is the prudential "limitations on third-party standing that restrict such [facial] challenges").  Because there is no third-party standing bar to Plaintiffs' suit, Plaintiffs may challenge the constitutionality of the statute with respect to the class of third-party indigent defendants on behalf of whom they filed suit.  *Essence, Inc.*, 285 F.3d at 1287-89 & n.13 (finding that plaintiffs had third-party standing to assert the rights of 18-20 year old patrons of nude dancing establishments and permitting plaintiffs' facial challenge to an age-specific ordinance as-applied to that class of third parties).

**B.      Section 16-7-301(4) does not apply to defendants ineligible for counsel.**

Defendants' facial versus as-applied argument rests on a faulty premise.  Defendants

argue that Plaintiffs cannot bring a facial challenge to the statute unless they can show that

Colorado Revised Statutes § 16-7-301(4) is "'invalid in the vast majority of its applications.'"

Mot. at 36 (quoting *Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1256 (10th Cir. 2008)); *but*

*see Doe*, 667 F.3d at 1124 ("[T]he fact that Doe brings a facial challenge does not automatically

compel the application of a specific test . . . .").  Plaintiffs cannot do so, Defendants assert,

because there is no right to counsel for "many" offenses "covered by § 16-7-301(4)."  Mot. at 37,

39.  But section 301(4) applies not to offenses, but instead to indigent defendants *with the right*

*to counsel* who are charged with certain offenses.

First, the text of section 301 as a whole contemplates that only indigent defendants

entitled to counsel are required to engage in mandatory, uncounseled plea discussions with the

prosecution under Colorado Revised Statutes § 16-7-301(4).[24]  Section 16-7-301 governs the

propriety of plea discussions and plea agreements.  The statute says that prosecutors may engage

in plea discussions in the interests of justice, but that such discussions shall be had, and an

agreement reached, only through or in the presence of defense counsel.  The statutory mandate

that plea discussions occur only in the presence of defense counsel is subject to three exceptions:

where the defendant:  "[1] is not eligible for appointment of counsel, or [2] refuses appointment

---

[24] Section 301(4) must be read in context, and "consistent, harmonious, and sensible
effect [given] to all of [the statute's] parts."  *People v. Hernandez*, 160 P.3d 263, 264 (Colo. Ct.
App. 2007) (quotations and citation omitted).  It is appropriate to interpret state law "according
to state rules of statutory construction."  *Citizens for Responsible Gov't State Political Action
Comm. v. Davidson*, 236 F.3d 1174, 1190 (10th Cir. 2000).

of counsel and has not retained counsel, or [3] except as provided in subsection (4) . . . ."  The

first exception expressly excludes defendants who are not eligible for the appointment of counsel

from the application of the section as a whole.  *See* Colo. Rev. Stat. § 16-7-301(1).  The second

exception excludes those who are eligible for appointed counsel, but have refused appointed

counsel, and have not retained counsel.  *See id.*  The third exception—at issue in this case—

further excepts from the prohibition against uncounseled plea negotiations those defendants who

*are* entitled to counsel, but who have been charged with certain offenses.  The listing of the

exceptions makes clear that subsection (4) applies to those who are eligible for appointment of

counsel, and are thus not subject to the first exception, but nonetheless must speak to a

prosecutor before seeking counsel under the third exception.

Second, section 16-7-301(4) confirms that it applies only to those with a right to counsel

by requiring the prosecuting attorney and the judge to provide notice to defendants regarding

their right to counsel and further mandating that the applications therefor be deferred.  *See id.*

§ 16-7-301(4)(a) ("prosecuting attorney *shall advise*") (emphasis added); *id.* ("application  . . .

*shall be deferred*") (emphasis added); *id.* § 16-7-301(4)(a)(I) ("court *shall* . . . advise") (emphasis

added); *id.* § 16-7-301(4)(a)(II) ("court *shall* appoint") (emphasis added).  "There is a

presumption that the word 'shall' when used in a statute is mandatory."  *Riley v. People*, 104

P.3d 218, 221 (Colo. 2004).  Defendants argue that there is no right to counsel in the "sizable

proportion of the cases to which [they say] the statute applies."  Mot. at 38.  But if there is no

right to counsel, then there is nothing for the prosecutor to advise the defendant, no application to

be deferred, nothing for the court to advise the defendant, and no counsel for the court to appoint

or reasons for plea discussions outside the presence of defense counsel to cease.  *Cf. Spahmer v.*

45

*Gullette*, 113 P.3d 158, 162 (Colo. 2005) ("We construe a statute so as to give effect to every word, and we do not adopt a construction that renders any term superfluous.").  Defendants ignore the statutory language and framework, which make clear that the statute applies to indigent defendants with a right to counsel.  To the extent that Defendants suggest that they apply the statute too broadly—to indigent defendants without the right to counsel, thereby rendering the statute's mandatory requirements without meaning and effect in a "sizable proportion of . . . cases"—that does not take away from the fact that there is a class of persons readily identifiable on the face of the statute to whom the statute unquestionably applies and who unquestionably have the right to counsel.  *Cf. Doe*, 667 F.3d at 1123.

Third, the history of Colorado Revised Statutes § 16-7-301(4) further confirms Plaintiffs' interpretation.  Section 301(4) was added as an additional exception to the general rule prohibiting plea discussions outside the presence of defense counsel.  Defendants ineligible for counsel were already excluded under section 301(1) (as they remain today).  "When a statute is amended it is presumed that the legislature intended to change the law."  *In re J.N.H.*, 209 P.3d 1221, 1223 (Colo. Ct. App. 2009) (quotations and citation omitted).  House Bill 92-1060 "was introduced in response to a request from the State Public Defender for additional staff due to an increase in the number of misdemeanor cases (primarily domestic violence and drug cases)."  *See* Colo. Gen. Assembly Joint Budget Committee, *FY 2009-10 Staff Budget Briefing, Judicial Department* at 35 (Nov. 25, 2008).[25]  In other words, section 16-7-301(4) was expressly added so that the Public Defender's Office would *not* have to increase its staff and workload and represent

---

[25] Documents prepared by the Joint Budget Committee staff are matters of public record, of which this Court may take judicial notice.  *See, e.g.*, *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

certain criminal defendants who were entitled to counsel, but might nonetheless be willing to accept a plea before obtaining counsel (thereby obviating the need to provide and pay for the counsel to which they were entitled).

Lastly, the related statutory framework governing the prosecution of indigent defendants in Colorado further undermines Defendants' arguments.  Under Colorado Revised Statutes § 16-5-501, indigent defendants entitled to counsel need not be provided with counsel if the prosecution files a written statement indicating that incarceration will not be sought for the charged offense.  Section 16-7-207(c), in turn, allows indigent defendants to apply for and be assigned counsel *except* if the defendant is charged with one of the offenses enumerated in Colorado Revised Statutes § 16-7-301(4) *and*, after engaging in uncounseled plea negotiations, the prosecutor files a written statement that incarceration is not being sought as provided in section 5-501.  *See* Colo. Rev. Stat. § 16-7-207(c); *see also id.* § 21-1-103(2) (requiring public defenders to represent indigent defendants charged with misdemeanors, except as provided in Colorado Revised Statutes § 16-5-501).  By providing a mechanism expressly designed to identify those defendants for whom counsel need not be provided—a written statement that the prosecutor will not seek incarceration—the statutory framework further confirms that defendants who are subject to the statute do have the right to counsel.

### C.    The Court may fashion a suitable remedy to address the constitutional harms suffered by indigent defendants with the right to counsel to whom the statute is applied.

Even if some indigent defendants to whom Defendants apply the statute may not have the right to counsel, many, if not most, obviously do, and the Court can tailor its remedy to those defendants.  As alleged in the Complaint, the statute applies to indigent defendants charged with

dn-167123

offenses subjecting them to mandatory jail time.  Compl. ¶ 45; *see also id.* ¶¶ 284-95 (Count II—

seeking declaration that Colorado Revised Statutes § 16-7-301(4) is unconstitutional as applied

to indigent defendants charged with offenses that carry mandatory jail sentences).  As admitted

by Public Defender Wilson, a declaration as to the unconstitutionality of Colorado Revised

Statutes § 16-7-301(4) with respect to indigent defendants charged with offenses that carry

mandatory jail sentences will remedy the harms alleged in Plaintiffs' Complaint, because the

Attorney General and the District Attorneys "will no longer conduct plea discussions with

uncounseled indigent defendants *who have a right to counsel* and who are subject to Colo. Rev.

Stat. § 16-7-301(4)."  Compl. ¶ 289(v) (emphasis added); PD Answer ¶ 19; *see also* Compl.

¶ 276(v); Dkt. No. 46, DA Thiebaut Answer ¶ 18.  Defendants completely ignore the fact that the

statute unquestionably applies to, and is enforced against, indigent defendants charged with

offenses that carry mandatory jail sentences.  There can be no question that the Sixth

Amendment right to counsel would attach in such cases, as they "result in some form of

incarceration."  Mot. at 37.  Similarly, those who are offered and accept plea deals for time-

served have also suffered a deprivation of their liberty interest resulting in the right to counsel.

At a minimum, the statute is unconstitutional with respect to these classes of indigent defendants

on whose behalves Plaintiffs have filed suit, and the Court may fashion suitable relief to remedy

their harms.  *Cf. Doe*, 667 F.3d at 1124 ("[T]he distinction [between facial and as-applied

challenges] 'goes to the breadth of the remedy employed by the Court, not what must be pleaded

in a complaint.'") (quoting *Citizens United*, 130 S. Ct. at 893); *Ayotte v. Planned Parenthood*,

546 U.S. 320, 323, 328 (2006) (allowing facial challenge to statute applied unconstitutionally in

only "some very small percentage of cases" because the remedy could properly be limited to that "very small percentage" of cases).

## IV.   DEFENDANTS CANNOT ESTABLISH THAT ALL INDIGENT DEFENDANTS VALIDLY WAIVE THEIR RIGHT TO COUNSEL BY ENGAGING IN MANDATORY PLEA DISCUSSIONS.

Defendants argue that they may engage in uncounseled plea discussions under Colorado Revised Statutes § 16-7-301(4) because each and every defendant covered by the statute necessarily waives his right to counsel by engaging in those uncounseled plea discussions.  Mot. at 40-45.  This argument is legally incorrect and contrary to the well-pleaded allegations in the Complaint.

A waiver of the right to counsel is valid only if made voluntarily, knowingly, and intelligently.  *See United States v. deShazar*, 554 F.3d 1281, 1288 (10th Cir. 2009).  And courts "indulge in every reasonable presumption against waiver."  *See United States v. Taylor*, 113 F.3d 1136, 1140 (10th Cir. 1997) (quotations and citation omitted).

Colorado Revised Statutes § 16-7-301(4) is the process that indigent defendants charged with certain offenses must follow to receive appointed counsel.  Under the statute, if an indigent defendant wants appointed counsel, he must engage in mandatory plea discussions—without counsel.  Colo. Rev. Stat. § 16-7-301(4).  He is permitted to apply for and receive counsel *only after* he first engages in those plea discussions—again, without counsel.  *Id.*  ("The application for appointment of counsel and the payment of the application fee *shall be deferred until after* the prosecuting attorney has spoken with the defendant as provided in this subsection (4).") (emphasis added).  The uncounseled plea discussions are a precondition to applying for and

receiving counsel.  Thus, engaging in the plea discussions, if anything, confirms that the indigent defendant wants to apply for and receive counsel.

Defendants emphasize that indigent defendants receive various advisements regarding their right to counsel.  But this argument erroneously equates advisements with voluntary and knowing waivers.  As the Supreme Court has held, merely informing a defendant that he has a right to counsel is not sufficient to establish that the defendant made a knowing and voluntary waiver.  *See Brewer v. Williams*, 430 U.S. 387, 404 (1977) (emphasizing that mere comprehension of the right is not sufficient for waiver).  And advising a defendant that he has a right to counsel cannot overcome, counteract, or otherwise undo that indigent defendants cannot, under the statute's plain language, even apply for counsel until after they have engaged in the required plea discussions.  Indigent defendants who want counsel must first engage in the mandatory, uncounseled plea discussions without counsel as a prerequisite for obtaining counsel.

In any event, Plaintiffs have set forth specific factual allegations to provide a plausible basis for showing that indigent defendants do not voluntarily and knowingly waive their right to counsel.  *See, e .g.*, Compl. ¶¶ 55-65, 123-26, 170-73, 192, 203, 225, 231, 247.  First, Plaintiffs identified advisement forms actually used by Defendants and their deputies in certain Colorado counties.  Compl. ¶¶ 57-67.  These advisement forms never inform indigent defendants that they have a right to apply for and receive appointed counsel prior to engaging in mandatory plea discussions with prosecuting attorneys under the challenged statute.  *Id.*  Nor do these advisement forms instruct indigent defendants that they voluntarily and knowingly waive their right to counsel if they engage in the mandatory plea discussions.  *See id.*  Second, Plaintiffs incorporated specific allegations of current and former public defenders that provide first-hand

50

testaments to the lack of voluntary and knowing waivers.  *See id.* ¶¶ 192, 203, 225, 231.

Moreover, District Attorney Bill Thiebaut and Public Defender Wilson have admitted that

indigent defendants do not waive their right to counsel when they engage in the required plea

discussions under the challenged statute.  *See* Dkt. No. 10, Am. Compl. ¶ 59; Dkt. No. 46, DA

Thiebaut Answer ¶ 5; Compl. ¶ 55; PD Answer  ¶ 4.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

Motion to Dismiss.

51

Dated: May 25, 2012

Respectfully submitted,


/s/ Scott F. Llewellyn
_____
     Scott F. Llewellyn
     Ian Kellogg
     Colin M. O'Brien
     Morrison & Foerster LLP
     5200 Republic Plaza
     370 Seventeenth Street
     Denver, Colorado  80202-5638
     Telephone:  303.592.1500
     Facsimile:   303.592.1510
     Email:  sllewellyn@mofo.com
            ikellogg@mofo.com
            cobrien@mofo.com

     Kathryn A. Reilly
     Husch Blackwell LLP
     1050 17th Street, Suite 1500
     Denver, CO 80265
     Telephone:  303.685.4800
     Facsimile: 303.685.4869
     Email:  kathryn.reilly@huschblackwell.com

     Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2012, I electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Matthew David Grove | matthew.grove@state.co.us |
| Rebecca Adams Jones | rebecca.jones@state.co.us |
| Henry Richard Reeve | hrr@denverda.org |
| L. Andrew Cooper | acooper@da18.state.co.us |
| Stanley L. Garnett | sgarnett@bouldercounty.org |
| Lisa Kay Michaels | lmichaels@bouldercounty.org |
| John M. Barth | barthlaw@aol.com |
| Jeffrey S. Pagliuca | jpagliuca@hmflaw.com |
| Cleo J. Rauchway | crauchway@hmflaw.com |
| Kathryn A. Reilly | kathryn.reilly@huschblackwell.com |

s/ Ian J. Kellogg
Ian J. Kellogg
Morrison & Foerster LLP
5200 Republic Plaza
370 Seventeenth Street
Denver, Colorado  80202-5638
Telephone:  303.592.1500
Facsimile:   303.592.1510
Email:  ikellogg@mofo.com

dn-167123