IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-CV-02930-JLK-BNB

COLORADO CRIMINAL DEFENSE BAR, a Colorado non-profit corporation, and
COLORADO CRIMINAL JUSTICE REFORM COALITION, a Colorado non-profit
corporation, *et al*.,

Plaintiffs,

v.

JOHN W. SUTHERS, in his official capacity as Attorney General of the State of
Colorado, *et al.*,

Defendants

---

**ATTORNEY GENERAL'S AND DISTRICT ATTORNEY GROUP
DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

---

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants John W. Suthers, in

his official capacity as Attorney General of the State of Colorado, and the District

Attorney Group Defendants SCOTT W. STOREY, District Attorney, First Judicial

District; MITCHELL R. MORRISSEY, District Attorney, Second Judicial District;

FRANK RUYBALID, District Attorney, Third Judicial District; DAN MAY, as District

Attorney, Fourth Judicial District; MARK D. HURLBERT, District Attorney, Fifth

Judicial District; TODD RISBERG, District Attorney, Sixth Judicial District; DANIEL

HOTSENPILLER, District Attorney, Seventh Judicial District; LARRY R.

ABRAHAMSON, District Attorney, Eighth Judicial District; MARTIN BEESON,

District Attorney, Ninth Judicial District; THOM LEDOUX, District Attorney, Eleventh

Judicial District; DAVID MAHONEE, District Attorney, Twelfth Judicial District;

ROBERT E. WATSON,  District Attorney, Thirteenth Judicial District; ELIZABETH

OLDHAM, District Attorney, Fourteenth Judicial District; JENNIFER SWANSON,

District Attorney, Fifteenth Judicial District; RODNEY D. FOURACRE, District

Attorney, Sixteenth Judicial District; DONALD S. QUICK, District Attorney,

Seventeenth Judicial District; CAROL A. CHAMBERS, District Attorney, Eighteenth

Judicial District; KENNETH R. BUCK, District Attorney, Nineteenth Judicial District;

STANLEY L. GARNETT, District Attorney, Twentieth Judicial District; PETER G.

HAUTZINGER, District Attorney, Twenty-First Judicial District;  RUSSELL WASLEY,

District Attorney, Twenty-Second Judicial District (hereinafter referred to as the "DA

Group Defendants"), by and through undersigned counsel, jointly submit the following

Reply in Support of Their Motion to Dismiss the Plaintiffs' Second Amended Complaint.

## INTRODUCTION

Nearly a year ago, this Court heard argument on the Defendants' Motion to

Dismiss the Plaintiffs' First Amended Complaint. The Complaint challenged the

constitutional validity of Colorado's plea bargaining procedures in misdemeanor, petty,

and traffic offense cases. The Court received extensive briefing on the issue, heard oral

argument from the parties, and reviewed the Plaintiffs' Complaint under the pleading

requirements established by the Federal Rules of Civil Procedure and enumerated by

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544 (2007). After due consideration, this Court determined that the Plaintiffs' Complaint did not meet those pleading standards. Transcript of Oral Argument, July 28, 2011 at pp. 32-33. The Court dismissed the Complaint, citing standing and justiciability bases, but granted the Plaintiffs leave to amend their pleadings to comply with the federal pleading rules. *Id*. at 33. Now, after another year of briefing, the Plaintiffs have again asked this Court to issue a declaration that Colo. Rev. Stat. § 16-7-301(4) violates indigent criminal defendants' right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution. However, because the Plaintiffs have not cured the defects that led to the dismissal of their First Amended Complaint, they have again failed to meet their pleading burden.

The core factual allegations that comprised the First Amended Complaint remain unchanged in the Second Amended Complaint (hereinafter "Complaint" or "Compl. at ¶ __"). The Plaintiffs still assert, in sweeping conclusory statements, that indigent criminal defendants in Colorado routinely suffer violations of their right to counsel as a result of Defendants' "enforcement" of the challenged statute. Compl. at ¶ 51; Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss (Doc. 78) at 11 (hereinafter "Response" or "Resp. at __."). They still contend that, despite the fact that no such indigent defendant is among their ranks, they are the proper party to bring this action. And they still argue that a declaration that the challenged statute is unconstitutional would alleviate their concerns about the wisdom of Colorado's plea bargaining procedure for misdemeanor, petty, and traffic offenses. However, none of these factual allegations,

taken as true, gives rise to a plausible inference that the Plaintiffs' perceived grievance should be heard in a federal court of limited jurisdiction.

All of the shortcomings of the First Amended Complaint persist in the Second Amended Complaint. The Plaintiffs still have not shown that a justiciable controversy exists between the parties to this action. Rather than presenting concrete factual allegations—asserted by actual aggrieved individuals—to establish a controversy for this Court to decide, they continue to ask this Court to render essentially an advisory opinion based on abstract hypothetical scenarios. They attempt to transform a defendant's right to counsel into a lawyer's right to clients, so that they might bring this suit "on behalf" of indigent defendants without actually having to represent those defendants' interests. Plaintiffs also fail to allege sufficient facts to allow this court to rule on either a facial challenge to the statute's constitutional validity or an as-applied challenge to its implementation.

The Plaintiffs' Response lends no more authority to their claims of standing and justiciability than any of their previous briefs. The Plaintiffs spend much of the Response reiterating the federal pleading standards, repeatedly stating the obvious: that plaintiffs' obligations at the pleading stage are "significantly less burdensome" than their obligations at later stages of litigation. Resp. at 3. However, the Plaintiffs ignore the fact that this Court has already reviewed their factual allegations under the "undemanding" federal pleading requirements, and previously found that the Plaintiffs' formulaic

recitation of the elements of a cause of action failed to establish a justiciable case or controversy.

The Response also makes extensive reference to two recent decisions by the U.S. Supreme Court. Plaintiffs cite *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), and *Missouri v. Frye*, 123 S. Ct. 1399 (2012), in support of the proposition that indigent criminal defendants have a right to counsel during plea bargaining. However, neither *Lafler* nor *Frye* have any bearing on the issue presently before this Court. Colorado has long recognized a defendant's right to counsel during plea bargaining where the defendant has not waived that right. *See People v. Pozo*, 746 P.2d 523 (Colo. 1987).  Thus, those cases—in which the Supreme Court applied the *Strickland* standard for effective assistance of counsel to the plea bargaining process—do not change Colorado law. Furthermore, those cases have no effect on the justiciability of the Plaintiffs' claims. Neither *Lafler* nor *Frye* alter the well-established federal rules of justiciability and standing. Therefore, the Plaintiffs' extensive reliance on *Lafler* and *Frye* does nothing to change the fact that the Plaintiffs' Second Amended Complaint fails to present a case or controversy that is appropriate for this Court to decide.

The Defendants do not question the Plaintiffs' genuine interest in ensuring Colorado's compliance with constitutional guarantees. But neither the purity of the Plaintiffs' intentions nor the intensity of their fervor can confer jurisdiction on a federal court to hear a case that is not appropriate for judicial resolution. The Plaintiffs' inability to achieve a policy change through their lobbying efforts in the Colorado legislature does

not create an injury that can be redressed by a federal court of limited jurisdiction.

Because the Plaintiffs' Second Amended Complaint has failed to cure the defects that

required dismissal of their earlier pleadings, this Court should dismiss the Complaint.

**ARGUMENT**

I.   **PLAINTIFFS HAVE AGAIN FAILED TO PRESENT AN ACTUAL CONTROVERSY THAT IS APPROPRIATE FOR JUDICIAL RESOLUTION.**

In order to invoke the jurisdiction of the federal courts, a lawsuit must present a

justiciable "case or controversy." That is, the action "must be definite and concrete,

touching the legal relations of parties having adverse legal interests," and presenting "a

real and substantial controversy . . . as distinguished from an opinion advising what the

law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300

U.S. 227, 240-41 (1937). Thus, "[c]laims based merely upon 'assumed potential

invasions' of rights are not enough to warrant judicial intervention." *Ashwander v.

Tennessee Valley Auth.*, 297 U.S. 288, 324-25 (1936) *quoting Arizona v. California*, 283

U.S. 423, 462 (1931). The Plaintiffs' Second Amended Complaint asks the Court to

render an advisory opinion based on a hypothetical state of facts. Thus, they have failed

to present an actual controversy that is appropriate for judicial resolution, and this Court

should dismiss the Complaint.

These Plaintiffs seek a declaration that Colo. Rev. Stat. § 16-7-301(4) is

unconstitutional. It is well established that "[n]o federal court . . . has jurisdiction to

pronounce any statute, either of a state or of the United States void, because

irreconcilable with the constitution, except as it is called upon to adjure the rights of litigants in actual controversies." *Golden v. Zwickler*, 394 U.S. 103, 110 (1969), *quoting United Pub. Workers v. Mitchell*, 330 U.S. 75, 89-90 (1947). Thus, in order to state a claim for relief under the Declaratory Judgment Act and the federal pleading rules, these Plaintiffs must allege sufficient facts to show "that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Joslin v. Sec'y of Dep't of Treasury*, 832 P.2d 132, 135 (10th Cir. 1987). However, the Plaintiffs' Complaint again fails to meet this burden.

This Complaint, like the first, is almost entirely based on speculation and conjecture. Though the Complaint adds three new "John Doe" and "Jane Doe" plaintiffs, along with several pages of new claims, its core factual assertions remain unchanged. In fact, the addition of these new plaintiffs and claims seems only to add a new layer of speculation to the abstract hypothetical question that the Plaintiffs first asked this court to answer nearly two years ago.

For example, the John Doe and Jane Doe plaintiffs—criminal defense attorneys and members of the Colorado Criminal Defense Bar—assert that they have "observed indigent defendants plead guilty to offenses covered by Colo. Rev. Stat. § 16-7-301(4) and be sentenced to time-served or additional time in jail after engaging in uncounseled plea discussions with the prosecuting attorney." Compl. at ¶ 182; *see also id*. ¶¶ 201, 221. However, these Plaintiffs fail to allege any facts which, if taken as true, would suggest

that such plea discussions constitute a violation of the right to counsel. They merely assert that the Plaintiffs "*believe*[] that most if not all indigent defendants . . . do not knowingly and voluntarily waive their right to counsel." *Id*. at ¶ 185 (emphasis added). Even accepting all of these new allegations as true, however, the Complaint fails to state a plausible claim for relief.

The Complaint asks this Court to render an advisory opinion based on an abstract hypothetical fact pattern: *if* an indigent defendant engages in uncounseled plea discussions, and *if* that person pleads guilty to a misdemeanor, petty, or traffic offense, and *if* that person receives a jail sentence, and *if* that person, despite being repeatedly advised of their right to counsel and engaging in plea discussions without requesting counsel, has not validly waived that right, *then* such defendant may have been denied the right to counsel guaranteed by the Sixth Amendment. But the Plaintiffs' Complaint still fails to allege sufficient facts to give rise to a plausible inference that this scenario ever actually occurs. And, despite the alleged frequency with which indigent criminal defendants are harmed by this scenario, the Complaint still fails to name even one actual person who has suffered this sort of hypothetical harm. The Plaintiffs seem content to rely on the possibility that, if the challenged statute remains in force, some hypothetical indigent criminal defendant *might* someday be harmed by it. But, as the U.S. Supreme Court has stated, "a hypothetical threat is not enough." *Zwickler*, 394 U.S. at 110

The Response, too, makes extensive use of hypothetical scenarios. In an attempt to demonstrate how the challenged statute could hypothetically violate the right to counsel,

the Response asks the Court to imagine an "indigent defendant charged with publicly

consuming more than 30 grams but less than 2 ounces of marijuana." Resp. at 33. This

imaginary defendant, according to the Plaintiffs, "*may* not suspect" that his or her plea

agreement could carry collateral consequences. *Id.* (emphasis added). And *if* those

collateral consequences do not come to bear right away, the incentive to challenge the

guilty plea *may* not arise until the challenge is time-barred. This hypothetical scenario

does not create a justiciable case or controversy. There are simply "too many 'ifs.'"

*Joslin*, 832 F.2d at 135.

## II.   EVEN IF THE PLAINTIFFS COULD PRESENT A JUSTICIABLE CASE OR CONTROVERSY, THEY LACK STANDING TO BRING THIS ACTION.

Even if the Plaintiffs' Complaint did present concrete factual allegations rather

than abstract hypothetical questions, the Plaintiffs are still without standing to bring this

action because they have failed to cure the standing defects endemic in the First

Complaint. The Plaintiffs have failed to allege any actual or imminent injury to their

organizational interests that would create standing to sue as an organization. Furthermore,

they have not established standing to sue either on behalf of their members or on behalf

of the hypothetically aggrieved indigent defendants whose interests they claim to

represent. Therefore, this Court should dismiss the Complaint.

### a.  Plaintiffs lack organizational standing to bring this suit.

In order to establish standing to sue as an organization, an organizational plaintiff

must demonstrate the same elements of standing that are required of individual plaintiffs:

an actual or imminent injury in fact, a causal connection between the injury and the allegedly illegal conduct, and a likelihood that the injury will be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). These Plaintiffs fail on all three counts.

Plaintiffs' Response correctly points out that an organization suffers a judicially cognizable injury when it is forced "to divert resources to counteract [a defendant's] illegal acts." Resp. at 21, *citing Common Cause of Colo. v. Buescher*, 750 F. Supp. 2d 1259, 1269 (D. Colo. 2010). However, in order to allege such an injury, it is not enough for an organization to claim that it spends money on lobbying activities, educational initiatives, or advocacy efforts. *See, e.g. N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238-30 (5th Cir. 2010). After all, both of the organizational plaintiffs in this case admit they regularly engage in such activities as part of their everyday advocacy work. *See* Compl. at ¶ 94 ("Colorado Criminal Defense Bar expends significant resources in contracting with a consultant to provide policy development and lobbying services."); *see also id.* at ¶ 138 ("Colorado Criminal Justice Reform Coalition engages in policy research, legislative lobbying, and educational initiatives to teach the public and policymakers about effective alternatives to incarceration, drug policy and sentencing reform, parole and re-entry issues, and collateral consequences of a criminal conviction."). Thus, to establish organizational standing, the Plaintiffs must do more than merely allege that they engage in lobbying activities or other advocacy work—they must

10

show a "diversion of resources" that "concretely and perceptibly" impairs the organization's ability to carry out its purpose. *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d at 239, *quoting Havens*, 455 U.S. at 379 (internal quotations omitted).

In this case, rather than showing a diversion of resources that impairs their ability to fulfill their organizational purpose, the Plaintiffs attempt to bootstrap their expenditures on this case and on their everyday advocacy work into a judicially cognizable injury-in-fact. They cannot identify a single program or activity that has suffered from the alleged "diversion of resources." Instead, they attempt to distinguish cases cited in the Motion to Dismiss by pointing out that "CCDB and CCJRC were not formed simply to challenge this statute," Resp. at 26, and by arguing that other courts have "found an Article III injury based on an organization's 'choice' to divert its resources to counteract the effects of [a] defendant's illegal conduct." Resp. at 24. They make no attempt, however, to explain how their expenditures on lobbying, policy development, and website maintenance constitute "diversions of resources" rather than everyday organizational expenditures. *See* Compl. at ¶¶ 94, 99. Moreover, they fail to show how these activities "counteract the effects" of the Defendants' compliance with Colorado law. Resp. at 24.

Plaintiffs appear to recognize that an organizational plaintiff "cannot convert its ordinary program costs into an injury in fact," *Nat'l Taxpayer's Union, Inc. v. United States*, 68 F.3d 1428, 1434, but they do not even allege that the challenged statute has subjected them to operational costs beyond those normally expended in pursuit of their

11

organizational goals. At most, the Plaintiff organizations have alleged that they regularly engage in lobbying activities, that they have engaged in lobbying in connection with this case, and that, because they failed to achieve their lobbying goals, they have suffered an injury that should be redressed by this Court. But these conclusory allegations are insufficient to establish a judicially cognizable injury. Thus, these plaintiffs have failed to allege any "diversion of resources" that would form the basis for organizational standing.

Moreover, even if the Plaintiffs had demonstrated a judicially cognizable injury, they have failed to show that such injury is traceable to the Defendants' conduct or would be redressed by a favorable decision by this Court. The Plaintiffs repeatedly state that the Defendants "enforce" the challenged statute, preventing indigent criminal defendants from obtaining counsel until they have engaged in "mandatory, uncounseled plea discussions with the prosecuting attorney." Resp. at 11. However, the Defendants only "enforce" Colo. Rev. Stat. § 16-7-301(4) to the extent that the District Attorney Group Defendants comply with their statutory obligation to "tell the defendant any offer that can be made based on the facts as known by the prosecuting attorney at that time," and to "advise the defendant that the defendant has the right to retain counsel or seek appointment of counsel." Colo. Rev. Stat. § 16-7-301(4). It is unclear how the Defendants' compliance with these statutory obligations causes the alleged injuries to the Plaintiffs' economic interests and organizational goals, since these statutory obligations neither require nor even contemplate that prosecutors prevent defendants from obtaining requested counsel. It is also unclear how a court's ruling striking down this statute would

redress those alleged injuries, since such ruling would not replace the challenged statute

with a new statute providing for the appointment of a public defender or alternate defense

counsel to all indigent criminal defendants at their first appearance in court.

### b. Plaintiffs lack standing to sue on behalf of their members.

Moreover, the Plaintiffs lack standing to sue on behalf of their members. In order

to establish "associational standing" to sue on behalf of individual members, an

organization must demonstrate that its members would have standing to sue in their own

right. *See Hunt v. Wash. State Apple Advertising Comm'n,* 432 U.S. 333, 343 (1977). But

because these Plaintiffs have not demonstrated that any member of either Plaintiff

organization would have standing to sue in his or her own right, they have not established

associational standing to bring this action.

In order to establish their members' standing to sue, Plaintiffs must show that the

members have suffered a "*personal injury* fairly traceable to the defendant's allegedly

unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521

U.S. 811, 818-19 (1997) (emphasis in original) *quoting Allen v. Wright*, 468 U.S. 737,

751 (1984) (internal quotations omitted). General allegations of abstract harm are not

enough—"the alleged injury must be legally and judicially cognizable." *Raines*, 521 U.S.

at 819. Courts "must carefully inquire as to whether appellees have met their burden of

establishing that their claimed injury is personal, particularized, concrete, and otherwise

judicially cognizable." *Id*. at 818-19. In their Complaint and Response, the Plaintiffs try

to transform a criminal defendant's right to counsel into a defense attorney's right to

clients, the interference with which might constitute a judicially cognizable injury. However, because no such right exists, the Plaintiff organizations have not shown that their attorney members have standing to bring this case. Therefore, the Plaintiffs lack standing to sue on behalf of those members.

Significantly, despite the fact that the Plaintiffs failed to establish associational standing in their First Amended Complaint, they have failed to allege any new facts in the Second Amended Complaint that would give rise to an inference of associational standing. The Plaintiffs ignore the fact that they failed to establish associational standing in their First Amended Complaint, and make no new allegations that would change this Court's determination that the Plaintiffs lack standing.

In their First Complaint, Plaintiffs Colorado Criminal Defense Bar (CCDB) and Colorado Criminal Justice Reform Coalition (CCJRC) asserted that the operation of Colo. Rev. Stat. § 16-7-301(4) inflicts four distinct injuries upon their attorney members. They claimed that the challenged statute impairs their members' ability to: (1) avoid uncertainty regarding compliance with their professional duties; (2) carry out their professional and statutory obligations; (3) fulfill their economic and liberty interests in practicing and receiving the benefits of their chosen profession by reducing the hourly compensation available to member attorneys listed as alternate defense counsel; and (4) fulfill their mission of representing indigent defendants. First Am. Compl. [Doc. #10] at ¶¶ 99-100. Their Second Amended Complaint makes the exact same claims. *See* Compl. at ¶¶ 84, 108-09, 155. Moreover, the additional allegations that John Doe and Jane Doe

14

member attorneys "feel a personal obligation" to represent indigent defendants does nothing to change the fact that CCDB and CCJRC lack associational standing to bring this action. Compl. at ¶ 244.

### c. Even if the Plaintiffs could establish Article III standing, this Court should dismiss their Complaint because the Plaintiffs lack prudential standing.

This Court should dismiss the Second Amended Complaint because the Plaintiffs again have failed to satisfy the prudential requirements for standing. The prudential rules of standing, though judicially self-imposed, safeguard the integrity of the federal courts' decisional and remedial powers. *See generally Warth v. Seldin*, 422 U.S. 490 (1975). They ensure that parties assert their own rights and interests rather than the rights of others, and that lawsuits are brought in the proper context by the proper parties. The prudential rules of standing make certain that federal courts of limited jurisdiction hear only those cases in which the issues have been clarified to such a degree as to allow them to craft a narrowly tailored remedy for the alleged harm. *See id*.; *see also Baker v. Carr*, 369 U.S. 186, 204 (1962). Because these Plaintiffs have wholly failed to satisfy the prudential rules of standing, this Court should dismiss their Complaint.

In their Response, the Plaintiffs attempt to establish standing to sue on behalf of hypothetically aggrieved indigent criminal defendants by asserting that they "will zealously advocate for the rights of the indigent defendants." Resp. at 27. They correctly state that the Defendants do not dispute their "zealous and vigorous" concern for the rights of indigent criminal defendants. *Id*. However, the Plaintiffs' enthusiasm for the

issues presented in this lawsuit is not enough to confer upon them standing to sue in federal court. Courts have recognized that even where Plaintiffs allege an actual injury in fact to a third party, their attempt to assert the rights of that third party must be critically examined because "the ability of the actual victim to protect his legal rights may be impaired by the activity of his self-appointed protectors." *People Organized for Welfare and Employment Rights (P.O.W.E.R.) v. Thompson*, 727 F.2d 167, 172-73 (7th Cir.1984).

In this case, the Plaintiffs ask this Court to adjudge the rights of third parties in a factual vacuum. They claim to represent the interests of indigent criminal defendants who have been harmed by the challenged statute, but allege no facts about how the statute caused the hypothetical harm to those hypothetical indigent defendants. They make no mention of the circumstances surrounding any allegedly unconstitutional plea bargain— the crime charged, the plea entered, the sentence imposed, or any collateral consequences that resulted from the plea. Despite their alleged "close relationship" to indigent defendants generally, they have not shown any "closeness" to a specific defendant that would allow them to make concrete factual allegations giving rise to an inference of third party standing. And they fail to show—except through hypothetical demonstrations of how an aggrieved indigent defendant *might* be prevented from asserting his or her own rights—any practical hindrance that would justify third-party standing in this case. Therefore, the Plaintiffs have failed to show that they have standing to assert the rights of these third parties, and this Court should dismiss the Complaint.

III.   **EVEN ASSUMING *ARGUENDO* THAT THE PLAINTIFFS HAVE ARTICLE III STANDING AND PRUDENTIAL STANDING, THEY HAVE NONETHELESS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

Even if Plaintiffs' Complaint did present a justiciable claim, it should nonetheless be dismissed because it fails to state a claim upon which relief may be granted. On the merits, the Plaintiffs' arguments fail as a matter of law for several different reasons. First, because they seek a one-size-fits-all solution to a statute that can be (and is) interpreted in a myriad of ways, Plaintiffs' demand for a declaration of facial unconstitutionality is not well-taken. Second, Plaintiffs' misunderstanding of the scope and application of the statute leads the Plaintiffs to incorrectly analyze the nature of their challenge and conclude that the Court can simply redraft the challenged statute to their satisfaction. Finally, the Plaintiffs ignore the detailed advisements that must precede, accompany, and follow any uncounseled plea negotiations that occur pursuant to § 16-7-301(4), and as a result fail to recognize that a defendant who elects to participate in uncounseled plea negotiations has voluntarily waived the right to counsel, at least for that stage of the proceedings.

a.   **Plaintiffs' facial challenge cannot succeed in part because their claims are based on allegedly unconstitutional interpretations and applications of the challenged statute.**

Plaintiffs' Response reveals some confusion about between facial and as-applied challenges, what is necessary to assert each type of claim, and the results that flow from each. As they originally pled the case, the Plaintiffs raised a pure facial challenge to § 16-7-301(4), *i.e.* they did "not seek to analyze the impact of a statute against the factual

17

context of the case; rather, [they sought] to invalidate a statute as unconstitutional on the basis of its text." Catherine Gage O'Grady, *The Role of Speculation in Facial Challenges,* 53 Ariz. L. Rev. 867, 869 (2011). Over time, however, the Plaintiffs' challenge has morphed into more of a hybrid approach. The Second Amended Complaint still seeks a broad declaration that § 16-7-301(4) is unconstitutional and an injunction barring Colorado officials from enforcing it, but in reaching its conclusions the Plaintiffs' most recent effort relies not only on the language of the statute, but also upon specific local implementations of § 16-7-301(4).  *See, e.g.,* Compl. at ¶¶ 57-67 (discussing advisement forms provided at first appearances in various Colorado county courts).

The Plaintiffs correctly point out that the Tenth Circuit's recent opinion in *Doe v. City of Albuquerque,* 667 F.3d 1111 (10th Cir. 2012), limited the "no set of circumstances" test articulated in *United States v. Salerno,* 481 U.S. 739 (1987), to cases involving overbreadth challenges. But in construing *Salerno* narrowly, *Doe* did nothing more than answer the question that the Tenth Circuit left unresolved in *Hernandez-Carrera v. Carlson,* 547 F.3d 1237, 1255-56 (10th Cir. 2008) ("we have left undecided whether a plaintiff making a facial challenge must establish that no set of circumstances exists under which the Act would be valid").  *Doe* left undisturbed *Hernandez-Carlson*'s core holding: that "a litigant cannot prevail in a facial challenge to a regulation or statute unless he at least can show that it is invalid in the vast majority of its applications." *Id.* (internal quotations and citations omitted). Notwithstanding the Response's strained interpretation of § 16-7-301, the Defendants maintain that the Plaintiffs are unable to

demonstrate that the challenged provision is invalid in the vast majority of its applications.

More important than the holding in *Doe*, however, is the practical effect of the Plaintiffs' strategic shift away from a pure facial challenge to one that focuses, at least in part, on the manner in which the statute is implemented. This new focus and the effect that it would have on the Plaintiffs' proposed litigation demonstrates precisely why this Court should not permit this case to advance as it is currently postured. On one hand, Plaintiffs seek a broad declaration—based solely on statutory text—that § 16-7-301(4) is unconstitutional and thus unenforceable. On the other, the Second Amended Complaint relies not solely on the text of the challenged statute, but also on the manner in which the statute is implemented in various counties around the state. Compl. at ¶¶ 57-65. But even if Plaintiffs were able to show that the isolated examples that they identify contravene the Sixth Amendment, it would not follow that the § 16-7-301(4) is *facially* unconstitutional. To the contrary, the fact that Plaintiffs complain about varying interpretations of § 16-7-301(4) across the state strongly reinforces the conclusion that granting facial relief would be inappropriate here. By pointing to specific instances in which this provision is interpreted in an allegedly unconstitutional fashion, Plaintiffs tacitly admit that the statute is susceptible to multiple modes of implementation, some of which are undoubtedly fully compliant with the Sixth Amendment. *See, e.g. New Mexico Youth Organized v. Herrera,* 611 F.3d 669, 676  n.5 (10th Cir.2010) (noting that plaintiff organizations' "'as-applied' challenge acknowledge[d] that the law may have some potentially

constitutionally permissible applications, but argue[d] that the law is not constitutional as applied").

The solution to an isolated anomalous interpretation is not to strike down the entire statute. Rather, if the Plaintiffs believe that certain district attorneys have implemented § 301(4) in a manner that violates the Sixth Amendment rights of certain criminal defendants, they should challenge those implementations by mounting an as-applied challenge, perhaps through postconviction proceedings, based on the facts in a particular case.

The Supreme Court's approach in *Citizens United v. FEC,* 130 S.Ct. 876, 893 (2010), does not suggest otherwise. Plaintiffs rely on *Citizens United* to assert that the Supreme Court has blurred the distinction between facial and as-applied challenges, but a review of recent Supreme Court jurisprudence reveals that the line is actually brighter than ever. *See, e.g.,* Gillian E. Metzger, *Facial and As-Applied Challenges under the Roberts Court,* 36 Fordham Urb. L.J. 773, 773-74 (2009) (noting that "the Roberts Court has advocated the as-applied approach in contexts in which facial challenges were previously the norm, suggesting that it intends to restrict the availability of facial challenges more than in the past").

As is pertinent to this case, the important lesson of *Citizens United* is that under the right circumstances, an appropriately pleaded and proven as-applied challenge can result in a declaration of facial unconstitutionality. *See Citizens United,* 130 S.Ct. at 893 ("[O]nce a case is brought, no general categorical line bars a court from making broader

pronouncements of invalidity in properly 'as-applied' cases," *quoting* Richard H. Fallon, Jr., *As-Applied Challenges and Third-Party Standing,* 113 Harv. L. Rev. 1321 (2000) (internal quotations omitted). *Citizens United* certainly did nothing to change the fact that "federal courts are not roving commissions assigned to pass judgment on the validity of the nation's laws, but instead address only specific cases and controversies." *Ward v. Utah,* 398 F.3d 1239, 1246 (10th Cir. 2005). "Although passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular, to which common law method normally looks." *Id., quoting Sabri v. United States,* 541 U.S. 600, 608-609 (2004).

Plaintiffs' Second Amended Complaint and their Response both demonstrate that "the particular," *i.e.* the manner and methods by which individual district attorneys interpret and implement the requirements of § 16-7-301(4), must be the focus of any constitutional analysis that this Court undertakes. Nonetheless, and despite the virtual certainty that the challenged statute is interpreted and implemented in different ways in each of Colorado's counties, Plaintiffs demand a blanket declaration that the statute may not be constitutionally applied, and thus is unconstitutional on its face. This Court should not permit this litigation to proceed in that manner.

**b.   This Court should not assume a quasi-legislative role and rewrite the challenged statute.**

Relying in part upon the Supreme Court's approach in a recent abortion case, *Ayotte v. Planned Parenthood,* 546 U.S. 320, 323 (2006), Plaintiffs invite the Court to rewrite § 16-7-301(4) to accord with their view of the Sixth Amendment. Resp. at 47. In

so doing, the Plaintiffs essentially ask this Court to assume a quasi-legislative role and amend the challenged statute in the same way that they were unable to do via their efforts to lobby the Colorado General Assembly.

Because "Supreme Court jurisprudence about abortion is *sui generis*," *Porcelli v. United States,* 404 F.3d 157, 161 (2d Cir. 2005), the Court's opinion in *Ayotte* is of limited precedential value to begin with. In any event, however, the Supreme Court's analysis in *Ayotte* speaks only to the outer limits of severability. It does not give license for wholesale redrafting. To the contrary, the case specifically cautions courts against "rewriting state law to conform it to constitutional requirements" or "circumventing the intent of the legislature." *Ayotte,* 546 U.S. at 329-330.

At most, the severability doctrine endorsed in *Ayotte* allows a court to "line out" portions of a statute that it deems constitutionally offensive. *See, e.g. Citizens for Responsible Gov't State Political Action Comm. v. Davidson,* 236 F.3d 1174, 1195-96 (10th Cir. 2000). Plaintiffs offer no plausible way for the Court to strike any particular language without simultaneously "compromis[ing] the integrity or coherence of the statute." *Id*. at 1196. A review of the statute demonstrates that such a task would be impossible in any event. Because the statute is written to apply to specific offenses, and not particular defendants, lining out the portions referring to indigent criminal defendants would leave it incoherent.

Moreover, severing offending language is disfavored where it would circumvent the intent of the legislature. Here, the legislature's intent is made obvious by two facts:

(1) the Plaintiffs lobbied to get the law changed, but failed; and (2) the challenged statute has no severability clause. "Under Colorado law, a severability clause 'creates a presumption that the legislature would have been satisfied with the portions of the statute that remain after the offending provisions are stricken as being unconstitutional.'" *Id.* at 1195, *quoting People v. Seven Thirty-Five E. Colfax, Inc.*, 697 P.2d 348, 371 (Colo. 1985). With no severability clause, and because the legislature rejected the Plaintiffs' attempts to change the law to their liking, there can be no doubt that independently scrutinizing and lining out offending portions of the statute is not a viable option. Because judicial redrafting of the law would violate separation of powers principles, Plaintiffs' invitation "to fashion a suitable remedy," should be rejected.

### c. When viewed as a whole, Colorado's statutory scheme ensures that individuals to whom the challenged statute applies have waived their right to counsel before any uncounseled plea negotiations begin.

On the merits, Plaintiffs argue that § 16-7-301(4) cannot be read as requiring a waiver of the right to counsel as a precondition to uncounseled plea negotiations. The Defendants disagree. As already detailed in the Motion to Dismiss, the statutes governing the first appearance, plea negotiation, and disposition process for defendants charged with misdemeanors, petty offenses, and traffic offenses are replete with advisement requirements concerning the right to counsel. Section § 16-7-301(4) itself explicitly states that ". . . the defendant is under no obligation to talk to the prosecuting attorney . . . [t]he prosecuting attorney shall advise the defendant that the defendant has the right to retain counsel or seek appointment of counsel." This exchange follows the trial court's first

advisement, during which it is "the duty of the judge to inform the defendant and make certain he understands . . . [that] he has a right to counsel." Colo. Rev. Stat § 16-7-207(1)(b) (2011). Because waivers of the right to counsel can be, and often are, inferred from conduct, a defendant's decision to proceed in light of these advisements can only be interpreted as a limited waiver of the right to counsel during the plea negotiation stage. *See North Carolina v. Butler*, 441 U.S. 369, 373 (1979) (noting that, in the Fifth Amendment context, "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is unusually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver"). While waiver of the Sixth Amendment right "requires not merely comprehension but relinquishment," *Brewer v. Williams,* 430 U.S. 387, 404 (1977), a defendant's decision to proceed with non-binding plea negotiations despite repeatedly being informed of his Sixth Amendment right to counsel by both the Court and the prosecutor can only be interpreted as at least a limited waiver of that right. If plea negotiations are successful, the fact that the defendant intended to negotiate a bargain without counsel's assistance (i.e., that he intended to at least temporarily waive his right to counsel), is confirmed by the court's additional advisement, provided "prior to acceptance of the defendant's plea," concerning the defendant's "right to a court-appointed attorney." Colo. Rev. Stat. § 16-7-301(4)(a)(I), (2011).

It is notable that Plaintiffs do not even cite the Supreme Court's holding in *Iowa v. Tovar*, 541 U.S. 77 (2004), much less address its impact on the analysis in this case. As

the Court unanimously held in *Tovar*, an uncounseled guilty plea may be constitutionally entered "when the trial court informs the accused of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea." *Id.* at 81. Given that statements made during plea negotiations are inadmissible, *see* Colo. R. Evid. 410; *People v. Garcia*, 169 P.2d 223 (Colo. App. 2007), it seems certain that a defendant's decision to engage in non-binding uncounseled plea negotiations—based upon the advisement that Colorado's statutes require the trial court and prosecutor to provide—constitutes a valid waiver of the right to counsel.

In response to Defendants' construction of the statutory text, Plaintiffs identify "advisement forms" and other "specific factual allegations" that ostensibly rebut the Defendants' interpretation of the statute. Resp. at 50. But as noted previously, relying on specific implementations of a statute that is applied and interpreted in different ways around the state only reinforces the Defendants' position that facial relief is inappropriate here. The bottom line is that, given the wide variability in the implementation of the challenged statute, the merits question in this case cannot be answered in the vacuum of a facial challenge. There are simply too many variables and factual uncertainties—many of which would remain hypothetical even after substantial factual development—for this Court to fashion a one-size-fits-all declaration that § 16-7-301(4) suffers from a constitutional infirmity.

## CONCLUSION

The Attorney General and District Attorney Group Defendants request that this Court dismiss the Plaintiffs' Second Amended Complaint for the reasons stated herein and in their Motion to Dismiss the Second Amended Complaint.

Respectfully submitted this 12th day of July, 2012 by:

_s/ Stanley L. Garnett_

STANLEY L. GARNETT*
District Attorney
KAREN LORENZ*
Chief Deputy District Attorney
LISA K. MICHAELS*
Deputy District Attorney

Boulder Justice Center
1777 Sixth Street
Boulder, CO 80302
Telephone: 303-441-3700
FAX: 303-441-4703
Email: sgarnett@bouldercounty.org
        klorenz@bouldercounty.org
        lmichaels@bouldercounty.org

*Attorneys for the District Attorneys of the
First through Ninth, and Eleventh through
Twenty-Second Judicial Districts

JOHN W. SUTHERS
Attorney General

_s/ Matthew D. Grove_

MATTHEW D. GROVE*
Assistant Attorney General
Public Officials Unit
State Services Section
REBECCA ADAMS JONES*
Assistant Attorney General
Appellate Division
Criminal Justice Section

*Counsel of Record for Attorney General
Suthers

1525 Sherman Street, 7th Floor
Denver, Colorado 80203

Telephone: 303-866-5264
FAX: 303-866-5671
Email: matthew.grove@state.co.us
         rebecca.jones@state.co.us

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of July, 2012, I electronically filed the foregoing DISTRICT ATTORNEY DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Scott F. Llewellyn:  sllewellyn@mofo.com

Collin Michael O'Brien:  cobrien@mofo.com

Ian Kellogg: ikellogg@mofo.com

Kathryn A. Reilly: kathryn.reilly@huschblackwell.com

Jeffrey S. Pagliuca: jpagliuca@hmflaw.com

Henry Richard Reeve: hrr@denverda.org

L. Andrew Cooper: acooper@da18.state.co.us

John M. Barth: barthlawoffice@gmail.com

*s/  Catherine Olguin*